IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONALD MIDDLEBROOKS, #129769, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:23-cv-00054 |
| v. | ) ) | JUDGE RICHARDSON |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| LISA HELTON, *et al*., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Donald Middlebrooks, an inmate on death row at Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee, filed this pro se, in forma pauperis action against Lisa Helton, Tennessee Department of Correction (TDOC) Commissioner; Tony Mays, RMSI Warden; Earnest Lewis, RMSI Warden of Security; Michael Keys; RMSI Warden of Treatment; f/n/u Ward, RMSI Corporal Grievance Clerk; Denniis [sic] Davis, RSMI Unit 2 Manager; Kyla Solomon, "RSMI Centurion HAS"; Jane/John Doe; and Centurion of Tennessee. (Doc. No. 1). The complaint asserts claims under 42 U.S.C. § 1983 and alleges violations of Tennessee state law.

Also pending are the following motions by Plaintiff: "Motion of Support" (Doc. No. 9), Motion for Restraining Order (Doc. No. 10), and Motion to Restrain (Doc. No. 11).

# I. MOTIONS

## A. MOTION OF SUPPORT

After filing his complaint, Plaintiff filed a "Motion in Support," in which he alleges that he has been denied his First Amendment right to access the courts.[1] He asks this Court "to issue an order to the Commissioner and Warden of RMSI that the law library in Unit two is to be open daily . . . ." (Doc. No. 9 at 1). While Plaintiff did not include in his complaint a First Amendment denial-of-access-to the-courts claim, he named TDOC Commissioner Helton and RMSI Warden Mays—both referenced in his Motion in Support—as Defendants in the original complaint. In his Motion in Support, Plaintiff also references "the Defendants[']" impediment of Plaintiff's due process rights, but Plaintiff does not identify which Defendants, other than Commissioner Helton and RMSI Warden Mays, he intends to sue with respect to a denial-of-access-to-courts claim. (*Id.* at 2).

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Here, the complaint has not been served yet; therefore, Plaintiff may amend his pleading to assert a denial-of-access-to-courts claim against both Commissioner Helton and Warden Mays. Plaintiff's Motion of Support (Doc. No. 9), which

---

[1] In support of his Motion in Support, Plaintiff includes grievances filed by other inmates regarding law library access. (*See, e.g.*, Doc. No. 9 at 6, 27). However, as a pro se litigant and non-attorney, Plaintiff cannot represent other inmates in this action. *See Bradley v. Mason*, 833 F. Supp.2d 763, 768 (N.D. Ohio 2011) (with no indication that plaintiff is an attorney, he cannot represent other inmates in court, even if those inmates consent to his representation). While Plaintiff asks the Court to "examine" two supervisors' responses to inmate grievances about law library access (*see* Doc. No. 9 at 1), the referenced supervisors' responses are to grievances filed by RMSI inmates other than Plaintiff. Therefore, to the extent Plaintiff seeks permission to amend his complaint to add those supervisors as defendants to this claim, the Court will not permit Plaintiff to do so. Plaintiff does not allege that these supervisors played any role in the denial of Plaintiff's access to courts.

the Court construes as a Motion to Amend, therefore will be granted. Accordingly, the Court will consider the complaint, as thus amended, to include a denial-of-access-to-courts claim.

The Court will screen the original complaint, as amended, pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

B. MOTIONS FOR RESTRAINING ORDER

After filing his complaint, Plaintiff filed a Motion for Restraining Order (Doc. No. 10) against "The Commissioner of Corrections enjoining and restraining its agents, servants, employees and attorny [sic] and all persons in active concert and participation with them from Impeding and denying the pro se plaintiff Donald Middlebrooks access to the courts by refusing his access to the law library at the policy stated times for trusties [sic] due to understaffing." (Doc. No. 10 at 1). To support his motion, Plaintiff cites Rule 65.03 of the Tennessee Rules of Civil Procedure. (*Id*.) Subsequently, Plaintiff filed a "Motion to Restrain" (Doc. No. 11) which essentially requests the same relief as does the Motion for Restraining Order. (These two motions collectively are referred to below as the "TRO motions").

The Tennessee Rules of Civil Procedure do not govern in this federal civil action. However, the Federal Rules of Civil Procedure provide for the issuance of a temporary restraining order (TRO) when appropriate. Federal Rule of Civil Procedure 65 governs the court's power to grant non-permanent injunctive relief, including TROs without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds

will minimize the irreparable injury." *Stenberg v. Checker Oil Co.,* 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee,* No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002)). Along the same lines, but more specifically, where "a preliminary injunction is mandatory [also known as "affirmative"]—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive action . . . the requested relief should be denied unless the facts and law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio,* 987 F. Supp. 1002, 1011 (N.D. Ohio 1997).

Those seeking a TRO (or preliminary injunction) must meet four requirements.[2] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County,* 56 F.4th 400, 403 (6th Cir. 2022).

Before the court can even reach the merits, however, a movant must comply with specific procedural requirements. First, because the movant bears the burden of justifying preliminary injunctive relief on the merits, *Kentucky v. U.S. ex rel. Hagel,* 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Second, a TRO motion must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a

---

[2] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

TRO motion "must be accompanied by a separately filed affidavit or verified written complaint"). Third, a TRO movant must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). This Court mandates "strict compliance" with this notice provision by pro se parties as well as represented parties. M.D. Tenn. L.R. 65.01(c).

Here, Plaintiff has not satisfied these procedural requirements with respect to either of his TRO motions. While his complaint is verified (Doc. No. 1 at 14), it does not mention the subject of his TRO motions (lack of access to the law library). Lack of law library access is the subject of Plaintiff's Motion of Support, which the Court construes as a Motion to Amend; however, the Motion of Support is not accompanied by an affidavit. In addition, Plaintiff's TRO motions were not accompanied by a memorandum of law. And Plaintiff has not explained in writing what particular efforts he made to give notice of the TRO motion to any Defendant or why notice should not be required under the circumstances. Because "strict compliance" with Rule 65's notice requirements is required, these failures are fatal to Plaintiff's TRO motions.

Therefore, Plaintiff's TRO motions (Doc. Nos. 10, 11) will be denied. However, the denial is without prejudice to file a subsequent motion to the same effect as the TRO motions, if appropriate and supported by the required documentation.

## II. SCREENING OF THE COMPLAINT

### A. PLRA SCREENING STANDARD

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks

monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require [courts] to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

B. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

C. <u>FACTS ALLEGED IN THE COMPLAINT</u>

Plaintiff is held in cell A-105 of Unit 2, which is the death row area of RMSI. Plaintiff suffers from "spine problems." (Doc. No. 1 at 8). A RMSI doctor prescribed an "A.V.O." medical device[3] to alleviate Plaintiff's problems. (*Id*.) Plaintiff also suffers from Gran-Mal seizures. During these seizures, Plaintiff sometimes inadvertently harms himself. RMSI Warden of Treatment Keys is aware of Plaintiff's seizures as he has been present on at least one occasion immediately after Plaintiff experienced a seizure.

On the morning of November 23, 2022, "Security Staff operating under Warden of Treatment Michael Keyes and Security officers employed under him" entered Plaintiff's cell and removed his "A.V.O." medical device. Plaintiff asked Officer Raffity for the name of the individual who had given the order to remove Plaintiff's medical device. Officer Raffity responded "that the order came from higher ups, under whose order she was operating." (*Id*.) Plaintiff informed Office Raffity and other unspecified security staff of Plaintiff's medical need for the device. Officer Raffity stated that "it did not matter if he or anyone else had a[] Doctor[']s approv[al] . . . Security was going to take them as ordered." (*Id*.)

On that same day, Plaintiff activated the grievance process regarding his confiscated medical device. Unit 2 Manager Davis "blocked" the grievance.[4] (*Id*. at 9). Corporal Ward subsequently "alter[ed] the source and cause of the grievance process" by characterizing the grievance as one about medical care and treatment. (*Id*.) Plaintiff's grievance was denied, and Plaintiff appealed.

After his medical device was confiscated, Plaintiff began experiencing rectal bleeding and "serious back pains." (*Id*. at 10). He provided stool samples and has undergone x-rays "in [his] back

---

[3] The complaint does not define "A.V.O" medical device.

[4] An attachment to the Complaint reflects that Unit Manager Davis responded in writing to Plaintiff's grievance as follows: "The reasons it was removed is because[] it no longer meets fire safety code." (Doc. No. 1, Attach. 1 at 5).

area" but has not received any medical treatment for his problems since the removal of his medical device. (*Id*. at 11).

RMSI Death Row Unit 2 lacks any "handicap cells," as Plaintiff refers to them; the Court, however, will refer to these cells to as accessible cells.[5] Plaintiff has made repeated attempts "to have a handicap housing [cell] constructed in unit two" because he and other death row inmates require accessible housing. (*Id*.) Warden Keys stated that "he was not going to have such a thing." (*Id*.) Plaintiff then contacted "Handicap Tennessee"[6] for assistance. (*Id*.) Attorney Kelsey Craig from "Handicap Tennessee" attempted to aid Plaintiff with his request for handicap housing, but "Riverbend" denied Craig's efforts. (*Id*.)

On an unspecified date, Plaintiff experienced a seizure "and was laying in his human waste unable to move when medical was called." (*Id*. at 10). Warden Keys required Plaintiff to "crawl through his human waste" to sign a money withdrawal form prior to receiving medical treatment for a seizure, asking Plaintiff, "What is your health worth?" (*Id*.)

In addition, Plaintiff is being denied access to the prison law library. (Doc. No. 9 at 1). The law library is open only in the mornings, during which time Plaintiff is required to report for his prison job. When Plaintiff requests access at other times, "there is always an issue with staffing or the staff just refuses to open the law library." (Doc. No. 11 at 3).

D. <u>ANALYSIS</u>

The complaint names ten Defendants to this action: Lisa Helton, Tennessee Department of Correction (TDOC) Commissioner; Tony Mays, RMSI Warden; Earnest Lewis, RMSI Warden of

---

[5] According to the Americans With Disabilities National Network, "handicapped" is an outdated and unacceptable term to use when referring to individuals or accessible environments. *See* https://adata.org/factsheet/ADANN-writing (last visited on April 5, 2023).

[6] Plaintiff appears to have mistakenly referred to Craig's organization as "Handicap Tennessee." It appears that Kelsey Craig is an attorney for Disability Rights, Tennessee, Inc. *See* https://www.disabilityrightstn.org/ (last visited on April 5, 2023).

Security; Michael Keys; RMSI Warden of Treatment; f/n/u Ward, RMSI Corporal Grievance Clerk; Denniis Davis, RSMI Unit 2 Manager; Kyla Solomon, "RSMI Centurion HAS"; Jane/John Doe; and Centurion of Tennessee. (Doc. No. 1 at 1-2). Helton, Mays, Lewis, Keyes, Ward, Davis, Solomon, and Doe are sued in their individual and official capacities. (*Id*.)

The complaint as amended alleges four claims under Section 1983: due-process claims against Keyes, Davis, and Ward for the handling of Plaintiff's grievances; deliberate-indifference-to-serious-medical-needs claims against Keys, Centurion, and Solomon; conditions-of-confinement claims against Helton, Mays, Lewis, and Keys; and denial-of-access-to-the-courts claims against Helton and Mays.

The complaint also alleges that Defendants violated certain state statutory provisions, specifically Tennessee Code Annotated §§ 41-1-408 and 409. (Doc. No. 1 at 11-12).

1. *Due-Process Claims*

Plaintiff alleges that Defendants Keyes, Davis, and Ward violated Plaintiff's due process rights by mishandling and/or mischaracterizing Plaintiff's grievance about the removal of his "A.V.O." medical device. (Doc. No. 1 at 9).

Prisoners, however, do not have a constitutionally protected liberty interest in an inmate grievance procedure. *See e.g., Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure"); *Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019). An inmate who bases a claim on dissatisfaction with the responses to his grievances fails to state a Section 1983 claim upon which relief can be granted. *See Proctor v. Applegate,* 661 F. Supp.2d 743, 766 (E.D. Mich. 2009). That is because "[s]ection 1983 liability cannot be based upon a defendant's handling of a grievance or failure to remedy unconstitutional behavior committed by others." *Taylor v. First Med. Mgmt.*, No. 18-5282, 2019 WL 1313828, *3 (6th

Cir. Feb. 21, 2019). *See Warren v. Doe*, 28 F. App'x 463, 464 (6th Cir. 2002). Thus, Plaintiff's mishandling-of-grievance claims against all Defendants must be dismissed.

    2. *Medical Needs Claims*

    Next, the complaint names Keys, Solomon, and Centurion as Defendants to the Plaintiff's Eighth Amendment claims alleging deliberate indifference to his serious medical needs.

    The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, as Plaintiff is. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, the Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. Eighth Amendment protection is applicable in the instant case.

    By contrast, the Due Process Clause of the Fourteenth Amendment provides the same kind (though not always identical) protection to pretrial detainees. *Richmond*, 885 F.3d at 937 ("The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees."). Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. Fourteenth Amendment protection is inapplicable here.

    A claim of deliberate indifference under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff

satisfies the objective component by alleging that the prisoner had a medical need that was "'sufficiently serious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)). A plaintiff satisfies the subjective component "'by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Rouster*, 749 F.3d at 446 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of

incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, for purposes of the required PLRA screening, the Court finds that the medical problems Plaintiff describes (severe pain, spine problems, rectal bleeding, Grand Mal seizures) constitute sufficiently serious medical needs. *See Taylor v. Franklin Cnty., Ky.*, 104 F. App'x 531, 538 (6th Cir. 2004) (finding that "[p]laintiff's complaints of back pain, loss of mobility and bladder incontinence" may constitute serious medical needs); *Grote v. Kenton Cnty.*, No. 2:20-00101 (WOB-CJS), 2023 WL 363094, at *12 (E.D. Ky. Jan. 23, 2023) (finding that plaintiff's seizure—during which time plaintiff was "foaming at the mouth and immobile—in the detox cell" constituted a serious medical need); *Whitworth v. CoreCivic, Inc.*, No. 3:17-cv-01121, 2019 WL 1427934, at *15-16 (M.D. Tenn. Mar. 29, 2019) (finding that plaintiff's "previously diagnosed, ongoing, and painful cervical spinal problems were sufficiently serious"); *Collins v. Warden, London Correctional Inst.*, No. 2:12-cv-1093 , 2013 WL 243397, at *4 (S.D. Ohio June 5, 2013) (finding that plaintiff's contention "that he suffers from a herniated disk condition that causes his spine to press down on his sciatic nerve" resulting in "excruciating pain" alleged a sufficiently serious medical need to meet the first element of a deliberate indifference claim).

With regard to the subjective component of Plaintiff's claims, which is a defendant-specific matter, the Court will start with Defendant Keys in his individual capacity. Although in some instances prison non-medical staff such Keys have no role in the provision of medical treatment to inmates, the complaint alleges that Keys, in his role as Warden of Treatment at RMSI, has a say in inmate treatment decisions and interfered with the Plaintiff's doctor-prescribed medical treatment by ordering that his "A.V.O" medical device be confiscated. *Compare Carson v. Hamblen Cnty.*, No. 2:15-cv-337, 2017 WL 3038135, at *5, 9 (E.D. Tenn. July 17, 2017) (dismissing inmate's Section 1983 claim, finding plaintiff had presented no evidence that sheriff or captain played any role in

medical care provided to diabetic inmate or knew of and disregard an excessive risk to inmate's health or safety). In doing so, the complaint continues, Keys knew of and disregarded an excessive risk to Plaintiff's health.

Prison personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or lack thereof or by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available."). Here, Plaintiff alleges that Keys interfered with Plaintiff's use of a prescribed medical device and knowingly caused Plaintiff to suffer pain needlessly by removing Plaintiff's access to the device. For purposes of this required PLRA screening, the Court finds that the complaint states a colorable Section 1983 deliberate-indifference-to-medical-needs claim against Keys in his individual capacity.

Second, the complaint alleges that Defendant Solomon, who "is responsible for inmate medical care at RMSI" (Doc. No. 1 at 4), provided no medical treatment to Plaintiff after he began experiencing rectal bleedings and pain. However, the complaint also alleges that, during this time, Plaintiff provided stool samples and underwent x-ray testing. Thus, it appears that Plaintiff may have undergone some medical testing for his bleeding and pain. But it remains unclear whether Plaintiff received any medical treatment as a result of that testing and what role, if any, Solomon played in that alleged testing or the alleged failure to provide treatment to Plaintiff.

"The who is important; to state a claim under § 1983, [Plaintiff] must allege the violation of a constitutional right by a person acting under color of state law." *Chapple v. Franklin Cnty.,* No. 2:21-cv-50866, 2022 WL 856815, at *8 (S.D. Ohio Mar. 23, 2022) (citing *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008)). "It is a basic pleading requirement that a plaintiff attribute factual allegations to particular defendants." *Stubbs v. Pelky*, No. 2:22-cv-121, 2022

WL 4714922, at *3 (W.D. Mich. Oct. 3, 2022) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 544 (2007)). Because Plaintiff is proceeding pro se, the Court will permit Plaintiff to amend his complaint, if he so desires, to 1) clarify Solomon's role in denying medical treatment to Plaintiff and 2) identify by name any other individual responsible for the denial of medical treatment to Plaintiff for the problems he experienced after the removal of his A.V.O. device.

Next, the Court will consider Defendant Centurion. As alleged in the complaint, Centurion is the entity responsible for providing medical care to inmates at RMSI. (Doc. No. 1 at 4). Because Centurion performs a traditional state function in providing medical care to state inmates, Centurion acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). For Centurion to be liable under Section 1983, Plaintiff must allege that there is a direct causal link between a policy or custom of Centurion and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). In other words, Centurion may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right"). Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Centurion's policies are shown to be the "moving force" behind Plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, Plaintiff has not alleged any facts from which the Court could conclude that an official policy or custom of Centurion resulted in a violation of Plaintiff's constitutional rights. Other than

being named as a Defendant to this action on page four of the complaint, Centurion is not mentioned again. Where a person or entity is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir.2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Thus, the Court finds that the complaint fails to state a deliberate-indifference-to-serious-medical-needs claim upon which relief can be granted under Section 1983 against Centurion.

Finally, the Court will move to Defendant Keys in his official capacity. Such claims are equivalent to claims against the entity that employs Keys, in this case the Tennessee Department of Correction (TDOC). *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). "TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr.*, No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014)). Eleventh Amendment sovereign immunity therefore applies. *See, e.g., Carter v. Bell*, No. 3:10-0058, 2010 WL 3491160, at *4 (M.D. Tenn. Sept. 1, 2010) (holding that RSMI Warden, "as an employee of [TDOC], represents the State of Tennessee"); *Arauz v. Bell*, No. 3:06-0901, 2007 WL 2457474, at *2 (M.D. Tenn. Aug. 24, 2007) (adopting report and recommendation holding that RSMI employees are "employees of [TDOC]"). Tennessee's sovereign immunity protects TDOC from official capacity claims for money damages. *Jones v. Mays*, No. 3:19-cv-00795, 2020 WL 5106760, at *5 (M.D. Tenn. Aug. 31, 2020). Here, Plaintiff seeks compensatory and punitive damages against Keys in his official capacity, which is actually a claim against TDOC. These damages are not available, due to TDOC's Eleventh Amendment sovereign immunity. (Doc. No. 1 at 12).

There are only three exceptions to the general rule of sovereign immunity: (a) where a state has waived its immunity and has consented to be sued in federal court, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); (b) where Congress validly abrogates sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment to the United States Constitution, *see Seminole Tribe of Florida*, 517 U.S. at 57-73; *Quern v. Jordan*, 440 U.S. 332, 340) (1979) (collecting cases)); and (c) where a plaintiff sues state officials in their official capacities seeking only prospective injunctive relief for a continuing violation of federal law, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). The first two exceptions do not apply: Congress has not abrogated Eleventh Amendment sovereign immunity under Section 1983, and Tennessee has not waived it or consented to suit under Section 1983. *Primm*, 2017 WL 1210066, at *5 (citing *Owens*, 2014 WL 5846733, at *3); *Burrell v. Tenn. Dep't of Human Servs.*, No. 94-5754, 1995 WL 314891, *2 (6th Cir. May 23, 1993) (per curiam); *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-cv-2377, 2015 WL 4879107, at *6 (M.D. Tenn. Aug. 14, 2015)).

However, Plaintiff seeks prospective injunctive relief of the nature that may implicate *Ex Parte Young*. (*See* Doc. No. 1 at 12) (seeking "injunctive relief ordering Defendants 'Immediately' to return the medical approved device or to replace such devices that are approved by medical within 30 days of the issuance of the Court's order to provide relief from chronic pain, treatment of his health care issues and the provision of adequate mental health treatment."). "[D]emands for injunctive relief are properly brought against a TDOC official in his official capacity." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *2 (M.D. Tenn. Mar. 5, 2020) (citing *Will*, 491 U.S. at 71 n.10). The Court thus considers whether Plaintiff has properly stated such a claim here against a TDOC official.

Under Section 1983, an official representing the state of Tennessee cannot be held liable for

injunctive relief under a theory of respondeat superior or vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, a plaintiff must allege: (1) that he or she suffered a constitutional violation; and (2) that a policy or custom of TDOC or the state of Tennessee directly caused the violation. *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-92 (1978)). In other words, "[a] plaintiff seeking to impose liability under [Section] 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Phillips v. Shelton*, No. 2:18-cv-00077, 2019 WL 429679, at *4 (M.D. Tenn. Feb. 4, 2019) (citing *Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) and *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, construing the pro se complaint liberally, Plaintiff alleges that a policy exists at RMSI whereby security officers confiscate inmates' doctor-prescribed medical devices. This policy, according to the complaint, resulted in security team members, including Defendant Keys, confiscating Plaintiff's doctor-prescribed medical device, which led to the disruption of Plaintiff's medical treatment and ensuing harm to Plaintiff.[7] For purposes of the initial review required by the

---

[7] Based on the attachments to the complaint submitted by Plaintiff, the referenced policy may be to confiscate inmate medical devices that violate the fire code. For purposes of initial review—wherein such a policy is assumed to exist as alleged—the question is not whether such a policy is reasonable but rather whether such a policy directly caused the violation of Plaintiff's rights as the complaint alleges.

PLRA, the Court finds that the complaint states a colorable claim for injunctive relief against TDOC, as described above.

In sum, Plaintiff's deliberate indifference claim against Defendant Keys in his individual capacity shall proceed as well as Plaintiff's claim for injunctive relief against Keys in his official capacity (which is, as explained, tantamount to a suit against the state of Tennessee) based on RMSI's inmate medical device policy.

3. *Conditions of Confinement Claims*

The complaint names Helton, Mays, Lewis, and Keys as Defendants to the Plaintiff's Eighth Amendment conditions-of-confinement claims. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (collecting cases); *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

Here, the Plaintiff's claims are premised, at least in part, on these Defendants' failure to ensure that there are accessible cells in Unit 2 of death row at RMSI, which Plaintiff alleges he needs due to his seizures. As to Defendant Keys specifically, the complaint alleges that he stated that "he was not going to have such a thing" [meaning, accessible housing on death row]. (Doc. No. 1 at 11).

The Eighth Amendment protects against conditions of confinement that constitute serious health or safety threats. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). As noted above, an Eighth Amendment conditions-of-confinement claim has two components, one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities," *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id*.

The Constitution does not mandate comfortable prisons, but it does not tolerate inhumane ones. *Farmer*, 511 U.S. at 832. At its core, "[t]he [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle*, 429 U.S. at 102 (internal quotation marks and citation omitted). Thus, the Constitution protects against punishments incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. (internal quotation marks and citation omitted). "As a society, we have grown increasingly sensitive to the need to accommodate individuals with disabilities," and courts have repeatedly found that the failure to provide accessible facilities to inmates may violate the Constitution. *Stoudemire v. Michigan Dept. of Corr.*, 614 F. App'x 798, 803 (6th Cir. 2015) (quoting *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)). *See, e.g., Kiman v. N.H. Dep't of Corrs.*, 451 F.3d 274, 287-88 (1st Cir. 2006) (holding that prisoner-plaintiff, who suffered from ALS, presented evidence that corrections officers prevented him from using a shower chair or accessible shower facilities despite repeated requests); *Frost*, 152 F.3d at 1129 (finding triable issue of fact regarding failure to provide adequate shower facilities to an inmate who wore a leg cast and used crutches); *LaFaut v. Smith*, 834 F.2d 389, 394 (4th Cir. 1987) (Powell, J., sitting by designation) (holding that paraplegic prisoner who alleged that prison officials had denied him adequate toilet facilities and necessary physical therapy despite the inmate's repeated requests stated an Eighth Amendment claim); *Muhammad v. Dep't of Corrs.*, 645 F. Supp. 2d 299, 314-18 (D. N.J. 2008) (holding that amputee prisoner stated an Eighth Amendment claim where he alleged he was assigned to an upper bunk in a cell located from a handicap accessible shower), *aff'd*, 396 F. App'x 789 (3d Cir. 2010); *Schmidt v. Odell*, 64 F. Supp. 2d 1014, 1029-33 (D. Kan. 1999) (holding that double amputee forced to crawl around the floor of the jail stated an Eighth Amendment claim). The safety risks associated with confining a handicapped

inmate in a cell not equipped for his needs has a level of "obviousness" sufficient to satisfy the objective and subjective elements of a claim for deliberate indifference. *Stoudemire*, 614 F. App'x at 803-04.

With respect to Defendant Keys in his individual capacity, the complaint alleges that he was aware of Plaintiff's need for accessible housing but refused to take any action to ensure that Plaintiff was housed in an accessible cell; in fact, Keys implied that there would be no accessible cells on death row on his watch. The complaint further alleges that, on at least one occasion, Keys required Plaintiff to "crawl through his human waste" to sign a money withdrawal form prior to receiving medical treatment for a seizure. (Doc. No. 1 at 10). For purposes of the required screening, these allegations support a claim of deliberate indifference. Therefore, the Court finds that the complaint states an actionable Eighth Amendment conditions-of-confinement claim against Defendant Keys in his individual capacity based on his role in Plaintiff's placement in a non-accessible cell while housed on death row at RMSI.

With respect to Defendants Helton, Mays, and Lewis, Plaintiff's individual capacity claims against them appear to be based solely on these Defendants' supervisory positions; Plaintiff does not allege that Helton, Mays, or Lewis had direct participation in housing decisions regarding any particular inmate, including Plaintiff. A Section 1983 plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller*, 408 F.3d at 827 n.3, and Plaintiff has failed to do so with respect to Helton, Mays, and Lewis.

To the extent that Plaintiff is attempting to hold these Defendants liable for the conduct of their subordinates, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the

supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that any of these Defendants encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Neither does the complaint allege that these Defendants "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of a subordinate. *Id*. Put simply, there are no allegations in the complaint connecting these Defendants to Plaintiff's housing assignment in any way other than the (alleged) fact that they have supervisory roles at the facility where Plaintiff is incarcerated. Consequently, the complaint fails to state Section 1983 claims upon which relief can be granted against to Helton, Mays, and Lewis in their individual capacities. These claims will be dismissed.

Finally, Plaintiff sues Keys, Helton, Mays, and Lewis in their official capacities. As noted *supra*, these are equivalent to claims against TDOC, *see Monell*, 436 U.S. 658, 690 n.55, and "TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm*, 2017 WL 1210066, at *5 (citing *Owens*, 2014 WL 5846733, at *3). Sovereign immunity therefore applies, with some potential exceptions, as noted above. Since Plaintiff seeks prospective injunctive relief of the nature that may implicate *Ex Parte Young*, the Court thus considers whether Plaintiff may pursue conditions-of-confinement claims under the Eighth Amendment against TDOC/State of Tennessee.

Here, Plaintiff attributes his alleged harm, at least in part, to an alleged TDOC or RMSI policy of failing to provide accessible housing to inmates on Tennessee's death row, despite policymakers knowing that some death row inmates like Plaintiff require such housing and that there is federal funding available to construct such housing. Thus, for purposes of the required PLRA screening, Plaintiff's official-capacity claims for injunctive relief (which are, as discussed above, tantamount to

claims against the relevant TDOC official) state colorable claims under Section 1983. These claims will proceed, as does Plaintiff's deliberate indifference claim against Defendant Keys in his individual capacity.

4. *Denial of Access to Court Claims*

The amended complaint alleges denial of access to court claims against Defendants Helton and Mayes. The law is well settled that a prisoner has a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." *Id*. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. *Bounds,* 430 U.S. at 830-31. It is not enough for a plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted in this context, a plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. *Walker*, 771 F.2d at 932; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff first points out that TDOC/RMSI policies require that inmates be afforded access to the law library at various times throughout the day. However, an inmate's allegation that prison officials failed to follow prison policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding that the violation of a prison

regulation is not actionable under Section 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Thus, Plaintiff does not have a constitutional right to demand that Defendants comply with any particular RSMI or TDOC policy. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

However, according to Plaintiff, the law library is open only in the mornings, during which time Plaintiff is required to report for his prison job. When Plaintiff requests access at other times, "there is always an issue with staffing or the staff just refuses to open the law library." (Doc. No. 11 at 3). "Without proper access to the law library[,]" Plaintiff alleges, he "cannot make a meaningful argument []or protect his constitutional rights . . . . [P]laintiff cannot even get to the law library to find the proper way to file" his motions for a TRO. (Doc. No. 11 at 3). Indeed, the Court herein has denied Plaintiff's request for a TRO because Plaintiff's submissions did not comply with the strict procedural requirements of the Local Rules. Thus, Plaintiff alleges that he has sustained an actual injury in his efforts to litigate.[8]

However, Plaintiff has not alleged what role, if any, Defendants Mayes and Helton had in decisions related to the operation of the prison law library. As the Court explained above, supervisors such as Mayes and Helton cannot be held liable simply because they are supervisors. In addition, Plaintiff's submissions suggest that other individuals at the prison had a role in decisions related to the operation of the prison law library, but Plaintiff failed to name these individuals as Defendants to this claim. *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant). Thus, Plaintiff's First Amendment denial of access to courts claim fails to state a claim upon which relief can be granted. However, because Plaintiff is proceeding pro se and has adequately alleged that the lack of access to

---

[8] To be clear, the Court denied Plaintiff's TRO motions without prejudice, so Plaintiff may file another TRO motion.

the prison law library impeded his efforts to seek a TRO in this action, the Court will permit Plaintiff an opportunity to amend his complaint for the purpose of identifying the individuals involved in decisions relating to the operation of the prison law library.

5. *State Law Claims*

In addition to asserting his federal claims, the complaint also alleges that Defendants violated certain state statutory provisions, specifically Tennessee Code Annotated §§ 41-1-408 and 409. (Doc. No. 1 at 11-12). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

At this early stage of the proceedings, it is unclear where a private right of action exists under the state statutes cited by Plaintiff. For now, the Court will exercise supplemental jurisdiction over these state-law claims and allow them to proceed past this initial review so that the record can be more fully developed for the purposes of determining whether such claims are viable.

## III. CONCLUSION

The Court construes Plaintiff's Motion for Support (Doc. No. 9) as a Motion to Amend Complaint, which will be granted. Plaintiff's TRO motions (Doc. Nos. 10 and 11) will be denied without prejudice to filing a subsequent motion to the same effect as the TRO motions, if appropriate and supported by the required documentation.

Having screened the amended complaint pursuant to the PRLA, the Court finds that Plaintiff's allegations state the following colorable claims under Section 1983: an Eighth Amendment deliberate-indifference-to-medical-needs claim against Defendant Keys in his individual capacity; an official-capacity claim for injunctive relief against the relevant TDOC official based on RMSI's inmate medical device policy; an Eighth Amendment conditions-of-confinement claim against

Defendant Keys in his individual capacity based on his role in Plaintiff's placement in a non-accessible cell while housed on death row at RMSI; and an official-capacity claim for injunctive relief against the relevant TDOC official based on an alleged TDOC or RMSI policy of failing to provide accessible housing to inmates on Tennessee's death row.

The following federal claims, however, will be dismissed: Plaintiff's (due process) mishandling-of-grievance claims against all Defendants; Plaintiff's deliberate-indifference-to-medical-needs claims against Centurion; and Plaintiff's conditions-of-confinement claims against Defendants Helton, Mays, and Lewis in their individual capacities. Further, Plaintiff cannot recover compensatory or punitive damages against Defendant Keys in his official capacity, and any such official-capacity claim is dismissed to the extent that it seeks such damages.

The Court will permit Plaintiff to amend his complaint, if he so desires, to add allegations serving to: 1) clarify Defendant Solomon's role in denying medical treatment to Plaintiff; 2) identify by name any other individual responsible for the denial of medical treatment to Plaintiff for the problems he experienced after the removal of his A.V.O. device; and/or 3) identify by name the individuals involved in decisions relating to the operation of the prison law library. Any amended complaint must be filed no later than 30 days after entry of this Order. If Plaintiff submits a timely amended complaint, the Court will screen the amended complaint pursuant to the PLRA upon receipt.

The Court for now will exercise supplemental jurisdiction over Plaintiff's state-law claims and allow them to proceed past this initial review so that the record can be more fully developed for the purposes of determining whether such claims are viable.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE