IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DONALD MIDDLEBROOKS, #129769, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:23-cv-00054 |
| v. | ) ) ) | JUDGE RICHARDSON MAGISTRATE JUDGE FRENSLEY |
| LISA HELTON, *et al*., | ) ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Pending before the Court is an Amended Complaint (Doc. No. 14), a "Motion to Add Dennis Davis as a Defendant in First Amendment Violation" (Doc. No. 15), and a "Motion to Reconsider the Defendant Dennis Davis" (Doc. No. 16) filed by pro se Plaintiff Donald Middlebrooks.

Plaintiff is inmate on death row at Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee. He filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Lisa Helton, Tennessee Department of Correction (TDOC) Commissioner; Tony Mays, RMSI Warden; Earnest Lewis, RMSI Warden of Security; Michael Keys; RMSI Warden of Treatment; f/n/u Ward, RMSI Corporal Grievance Clerk; Dennis Davis, RSMI Unit 2 Manager; Kyla Solomon, "RSMI Centurion HAS"; Jane/John Doe; and Centurion of Tennessee. (Doc. No. 1). The complaint also alleges violations of Tennessee state law.

**I. BACKGROUND**

By Order entered on May 4, 2023, the Court granted Plaintiff's Application for Leave to Proceed In Forma Pauperis, granted his Motion for Support (which the Court construed as

a Motion to Amend Complaint), denied his Motions for a Restraining Order, and conducted the required screening of the amended complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. No. 13). In so doing, the Court found that Plaintiff's allegations state the following colorable claims under Section 1983: an Eighth Amendment deliberate-indifference-to-medical-needs claim against Defendant Keys in his individual capacity; an official-capacity claim for injunctive relief against the relevant TDOC official based on RMSI's inmate medical device policy; an Eighth Amendment conditions-of-confinement claim against Defendant Keys based on his role in Plaintiff's placement in a nonaccessible cell while housed on death row at RMSI; and an official-capacity claim for injunctive relief against the relevant TDOC official based on an alleged TDOC or RMSI policy of failing to provide accessible housing to inmates on Tennessee's death row. (*Id*. at 3).

The Court dismissed the following federal claims: Plaintiff's (due process) mishandling-of-grievance claims under Section 1983 against all Defendants; Plaintiff's deliberate-indifference-to-medical-needs claims against Centurion; and Plaintiff's conditions-of confinement claims against Defendants Helton, Mays, and Lewis in their individual capacities. (*Id*. at 4). Further, the Court found that Plaintiff cannot recover compensatory or punitive damages against Defendant Keys in his official capacity and dismissed any such official-capacity claim to the extent that it seeks such damages. (*Id*.)

The Court permitted Plaintiff to amend his complaint, if he so desired, to add allegations serving to: 1) clarify Defendant Solomon's role in denying medical treatment to Plaintiff; 2) identify by name any other individual responsible for the denial of medical treatment to Plaintiff for the problems he experienced after the removal of his A.V.O. device[1]; and/or 3)

---

[1] As defined by Plaintiff, "A.V.O." stands for Administrative Verified Order. (Doc. No. 14 at 11). Plaintiff uses the acronym to refer to an order for a medical device placed by a prison physician for an inmate. Plaintiff alleges that

identify by name the individuals involved in decisions relating to the operation of the prison law library. (*Id*.) The Court ordered that Plaintiff must file any amended complaint no later than 30 days after entry of the Court's Order. (*Id*.)

Finally, the Court indicated that it would exercise supplemental jurisdiction over Plaintiff's state-law claims and allow them to proceed past the initial review so that the record could be more fully developed for the purposes of determining whether such claims are viable. (*Id*.)

Plaintiff now has filed a timely second amended complaint against RSMI Unit Manager Dennis Davis, RMSI Warden of Treatment Michael Keys, RMSI Sgt/Disciplinary Sgt f/n/u Moyer, Officer f/n/u Rafity, RMSI Centurion Kyla Solomon, Unnamed Nurse, and the Tennessee Department of Correction (TDOC). (Doc. No. 14 at 1). Plaintiff also filed motions asking the Court to reconsider its dismissal of Defendant Davis (Doc. No. 16) and seeking to add Dennis Davis "as Defendant in First Amendment Violation" (Doc. No. 15). The Court will begin with Plaintiff's Motion to Reconsider.

## II. MOTION TO RECONSIDER

While the Federal Rules do not explicitly permit motions to reconsider, Rule 54(b) of the Federal Rules of Civil Procedure gives district courts broad discretion to revise interlocutory orders (like the Court's Order of May 4, 2023) under certain circumstances. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "This authority allows district courts 'to afford such relief from [interlocutory orders] as justice requires.'" *Id*. (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp*., 857 F. Supp. 976, 981 (D.D.C. 1994)). "Traditionally, courts will find justification for reconsidering interlocutory orders

---

prison physician Dr. f/n/u Sidberry "A.V.O.'ed" a medical device for Plaintiff, which Plaintiff describes as "a back padding to prevent painful trauma and bleeding post seizures." (*Id*. at 11, 12).

when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. "This standard obviously vests significant discretion in district courts." *Id.* at 959 n.7. Thus, the Court will consider Plaintiff's Motion to Reconsider under Rule 54.

Here, Plaintiff asks the Court "to reconsider the Defendant Dennis Davis." (Doc. No. 16 at 1). In his motion, Plaintiff does not identify which of the dismissed claim(s) against Davis he wants the Court to reconsider. Plaintiff simply states that he "offers the following exhibits in support of his motion to reconsider." (*Id.*) The Court's review of the exhibits provided by Plaintiff make clear that Plaintiff is not asking the Court to reconsider its dismissal of Plaintiff's due process or grievance-related claims against Davis; rather, Plaintiff seeks to amend his complaint to add a First Amendment denial-of-access-to-the courts claim against Davis. (*See id.* at 4). Indeed, Plaintiff has filed a separate "Motion to Add Dennis Davis as Defendant in First Amendment Violation." (Doc. No. 15 at 1).

Plaintiff's first amended complaint (the subject of the Court's first PLRA screening) did not allege a First Amendment denial-of-access-to-the-courts claim against Davis. Therefore, Plaintiff's Motion to Reconsider will be denied as moot as the Court has not previously dismissed the claim against Davis that Plaintiff now wishes to add. The Court instead will screen Plaintiff's second amended complaint to determine whether that claim, and others raised therein for the first time, survive the required PLRA screening. 28 U.S.C. §§ 1915(e)(2) and 1915A.

### III. PLRA SCREENING OF THE SECOND AMENDED COMPLAINT

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted,

is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

A. ANALYSIS OF SECTION 1983 CLAIMS

The second amended complaint adds the following claims under Section 1983: denial-of-access-to-court claims against Davis in his individual capacity; deliberate-indifference-to-medical-needs claims against Solomon, Moyer, Lewis, Centurion, Davis, and Unnamed Nurse; claims under the Americans With Disabilities Act and the Rehabilitation Act against Davis, Solomon, Keys, and TDOC; due process claims against Solomon, Moyer, Lewis, Centurion, Davis, and Unnamed Nurse; and equal protection claims against Solomon, Moyer, Lewis, Centurion, Davis, and Unnamed Nurse.

In its prior Memorandum of Law, the Court recited the relevant facts alleged in the first amended complaint and will not repeat them here. (*See* Doc. No. 12 at 7-8). However, in conducting this screening, the Court will note any pertinent facts alleged for the first time in the second amended complaint.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

### 1. *Denial of Access to Court Claims*

The law is well settled that a prisoner has a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." *Id*. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). What constitutes meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. *Bounds*, 430 U.S. at 830-31. It is not enough for a plaintiff simply to claim that he was denied access to the courts, or that he did not have access

to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted in this context, a plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. *Walker*, 771 F.2d at 932; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

The first amended complaint asserted First Amendment denial-of-access-to-courts claims under Section 1983. But the Court found that these claims failed to state claims upon which relief could be granted because the first amended complaint had not alleged what role, if any, Defendants Mayes and Helton had in decisions related to the operation of the prison law library and failed to name the other individuals who allegedly played a role in the operation of the law library. (Doc. No. 12 at 22-24). However, the Court allowed Plaintiff to amend his complaint for the purpose of identifying the individuals involved in decisions relating to the operation of the prison law library. (*Id*. at 23-24).

Plaintiff then filed a "Motion to Add Dennis Davis as a Defendant in First Amendment Violation." (Doc. No. 15).[2] Plaintiff asks the Court to consider "the following exhibits to support" the addition of this claim, but no exhibits are attached to his motion. (*Id*. at 1). However, Plaintiff attached fifty-three pages of exhibits and argument to his "Motion to Reconsider the Defendant Dennis Davis", which was received by the Court on the same day as Plaintiff's "Motion to Add Defendant Dennis Davis in First Amendment Violation." These exhibits and argument relate to Plaintiff's denial-of-access-to-courts allegations. Therefore, the Court considers these exhibits and argument in support of Plaintiff's attempt to add a denial-of-access-to-courts claim against Davis.

---

[2] Plaintiff did not include this claim in his second amended complaint. (*See* Doc. No. 14).

Plaintiff offers exhibits to show that the law library routinely is closed for inmates in Unit 2 at times during which TDOC/RMSI policies require it to be open. (Doc. No. 16-1). However, an inmate's allegation that prison officials failed to follow prison policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). *See also Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (finding that the violation of a prison regulation is not actionable under Section 1983) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). Thus, Plaintiff does not have a constitutional right to Defendants' compliance with any particular RSMI or TDOC policy regarding library access. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

Plaintiff also alleges that the law library is open only in the mornings, during which time Plaintiff is required to report for his prison job. Plaintiff provides various exhibits supporting his allegations, such as his employment time sheets and an affidavit from the Unit 2 prison law clerk/librarian. And, as the Court explained in its prior Memorandum Opinion, Plaintiff has alleged that he sustained an actual injury, in his efforts to litigate, due to the restrictions on his access to the prison law library. (*See* Doc. No. 12 at 23). However, like its predecessor, the second amended complaint fails to explain what role, if any, Davis had in decisions related to the operation of the law library. Supervisors such as Davis cannot be held liable simply because they are supervisors. The Court cannot allow a claim against a defendant to proceed beyond the required PLRA screening absent allegations pertaining personally to that defendant. Even under the liberal standards for pro se pleadings, such absence renders the claim insufficient. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149,

155–57 (1978)) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under [Section] 1983."). Thus, the second amended complaint fails to state First Amendment denial-of-access-to-courts claims against Davis in his individual capacity. Plaintiff's motion to add Davis as a defendant to this claim will be denied.

### 2. *Deliberate Indifference to Serious Medical Needs Claims*

The second amended complaint alleges deliberate-indifference-to-medical-needs claims against Keys, Solomon, Moyer, Lewis, Davis, Rafity, and Unnamed Nurse in their individual capacities as well as against Centurion. The Court previously allowed a deliberate-indifference claim to proceed against Defendant Keys in his individual capacity, and the claim does not need repeat screening with respect to Defendant Keys. The Court also allowed to proceed an official-capacity claim for injunctive relief against the relevant TDOC official based on RMSI's inmate medical device policy. That claim also does not need repeat screening. The Court dismissed Plaintiff's deliberate-indifference-to-medical-needs claim against Centurion, and the Court will not revisit that decision here.[3]

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).[4] A plaintiff's' claim of deliberate

---

[3] Although Plaintiff asks the Court to reconsider its dismissal of Defendant Keyes, Plaintiff does not ask the Court to reconsider its dismissal of Plaintiff's deliberate-indifference-to-medical-needs claim against Centurion. The Court will not engage in *sua sponte* reconsiderations of its prior dismissals.

[4] The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, as Plaintiff is. *See Richmond*, 885 F.3d at 937 ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts generally speak in terms of "Eighth Amendment" protection without any reference (beyond an initial reference) to the Fourteenth Amendment. Eighth Amendment protection is applicable in the instant case because Plaintiff is a convicted prisoner.

indifference under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "'sufficiently serious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). A plaintiff who is a prisoner (like Plaintiff) rather than a pretrial detainee satisfies the subjective component "'by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" [5] *Rouster*, 749 F.3d at 446 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Under these standards, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429

---

By contrast, the Due Process Clause of the Fourteenth Amendment provides the same kind (though not always identical) protection to pretrial detainees. *Richmond*, 885 F.3d at 937 ("The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees."). Such protection is generally referred to by courts as "Fourteenth Amendment" protection without any reference (beyond an initial reference) to the Due Process Clause. Fourteenth Amendment protection is inapplicable here.

[5] It is worth noting in passing that a claim of deliberate indifference brought by a pretrial detainee (as opposed to a convicted prisoner like Plaintiff) now has, in the Sixth Circuit at least, a different test for the subjective component. Without unnecessarily getting into the details here, suffice it to say that, since late 2021, "the second prong of the deliberate indifference test [the subjective component] applied to pretrial detainees . . . require[s] only recklessness." *See Greene v. Crawford Cnty., Mich.*, No. 20-1715, 2022 WL 34785, at *8 (6th Cir. Jan. 4, 2022) (citing *Brawner v. Scott Cnty, Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021)).

U.S. at 106. In addition, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In sum, generally speaking, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d 693, 703.

Here, for purposes of the required PLRA screening, the Court already has found that the medical problems Plaintiff describes (severe pain, spine problems, rectal bleeding, Grand Mal seizures) constitute sufficiently serious medical needs. (Doc. No. 12 at 12) (citing *Taylor v. Franklin Cnty, Ky.*, 104 F. App'x 531, 538 (6th Cir. 2004) (finding that "[p]laintiff's complaints of back pain, loss of mobility and bladder incontinence" may constitute serious medical needs); *Grote v. Kenton Cnty.*, No. 2:20-00101 (WOB-CJS), 2023 WL 363094, at *12 (E.D. Ky. Jan. 23, 2023) (finding that plaintiff's seizure—during which time plaintiff was "foaming at the mouth and immobile—in the detox cell" constituted a serious medical need); *Whitworth v. CoreCivic, Inc.*, No. 3:17-cv-01121, 2019 WL 1427934, at *15-16 (M.D. Tenn. Mar. 29, 2019) (finding that plaintiff's "previously diagnosed, ongoing, and painful cervical spinal problems were sufficiently serious"); and *Collins v. Warden, London Correctional Inst.*, No. 2:12-cv-1093 , 2013 WL 243397, at *4 (S.D. Ohio June 5, 2013) (finding that plaintiff's contention "that he suffers from a herniated

disk condition that causes his spine to press down on his sciatic nerve" resulting in "excruciating pain" alleged a sufficiently serious medical need to meet the first element of a deliberate indifference claim)).

With respect to the subjective component of Plaintiff's claims, the second amended complaint alleges that Defendant Solomon, who is "responsible for inmate care at RMSI" (Doc. No. 1 at 4), "denied replacing" (*i.e.*, denied a request to replace) Plaintiff's A.V.O. device "due to the cost thereof" even though Solomon was aware that Plaintiff was suffering without the device (Doc. No. 14 at 24); Defendant Moyer, who has "the final authority to treat and have treated" Plaintiff's seizures (*id*. at 33-34), and Defendant Lewis were aware of Plaintiff's conditions (*id*. at 31) yet "deliberately refused to replace or retrieve the medical device" and, as a result, Plaintiff experienced bleeding, pain, insomnia, and unnecessary suffering (*id*.); further, "not only did Lewis know of his [Plaintiff's] injury to his back area, but when the plaintiff complained AWC Lewis had the wheelchair removed used to transport the Plaintiff to the infirmary removed from the unit in which the plaintiff lived" (*id*. at 30); Unit 2 Manager Davis "did intentionally interfere with the medical treatment proscribed [sic] to the plaintiff for his ADA handicap by Dr. Sidberry" and did so with deliberate indifference to Plaintiff's serious medical needs (*id*. at at 51); "Unnamed Nurse", who was aware of Plaintiff's medical condition (*id*. at 42), denied medical care and treatment to Plaintiff "with intent and foreknowledge did disregard[] the excessive risks to the plaintiff's health and safety" (*id*. at 42) by leaving Plaintiff "unaided in his cell" while he suffered (*id*.) and failing to provide needed care after Plaintiff's medical testing (*id*. at 44); "Unnamed Nurse", Davis, and Rafity, "with the intent to harm" and "malice", altered Plaintiff's medically-related grievances (*id*. at 52) which resulted in delayed care to plaintiff (*id*. at 45, 64); and Rafity "did with intent and foreknowledge disregard[] the excessive risks to the plaintiff's health and

safety by the removal of a doctor approved device" when Rafity was aware of Plaintiff's medical condition (*id*. at 61).

Prison personnel may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs," or in their lack of response, by "interfer[ing] with treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available."). For purposes of initial review, Plaintiff's allegations are sufficient to satisfy the subjective component of this claim against Defendants Solomon, Moyer, Lewis, Davis, Rafity, and Unnamed Nurse. Thus, the Court finds that the second amended complaint states colorable Eighth Amendment claims under Section 1983 against these Defendants in their individual capacities based on the alleged denial of, or interference with, medical treatment for Plaintiff's alleged serious medical needs.

### 3. *Substantive Due Process Claims*[6]

The second amended complaint alleges that Defendants Centurion, Solomon, Moyer, Lewis, Davis, and Unnamed Nurse denied Plaintiff "his due process to medical health and treatment under ADA and denying to replace the device much needed by the plaintiff." (Doc. No. 14 at 27). It further alleges that Defendants' actions of "leaving the plaintiff in his cell to bleed and suffer unduly did violate the Due Process Clause of the Fourteenth Amendment." (*Id*. at 47).

The Due Process Clause of the Fourteenth Amendment protects individuals from state actions that deprive the individual of life, liberty, or property without due process of law. U.S.

---

[6] The Court previously screened Plaintiff's procedural due process claims that were based on Defendants' "mishandling and/or mischaracterizing" of Plaintiff's grievances. (*See* Doc. No. 12 at 9-10). The Court notes, however, that Plaintiff's allegations that some Defendants mishandled or mischaracterized Plaintiff's grievances are distinct from Plaintiff's allegations that Defendants Unnamed Nurse, Davis, and Rafity purposefully altered Plaintiff's medical grievances for the purpose of delaying treatment to Plaintiff. The Court considered those latter allegations *supra* when screening Plaintiff's Eighth Amendment deliberate-indifference-to-medical-needs claims.

Const. amend. XIV, § 1. To state a cognizable substantive due process claim, a plaintiff must allege "that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) (quotation omitted). To satisfy that test, a plaintiff must allege a government action that, at a minimum, "'*significantly* interferes with the exercise of a fundamental right.'" *Id.* (quoting *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (emphasis added by *Beydoun*)). "Interests protected by substantive due process . . . include those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that 'shock the conscience,' and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003) (citation omitted).

A sister district court has recognized that, "[i]n the context of § 1983 actions, the Supreme Court has recognized 'three kinds' of due process claims that a prisoner may bring against a state official under the Fourteenth Amendment." *Settle v. Paris*, No. 3:19-cv-32, 2021 WL 1566074, at *8 (E.D. Tenn. Apr. 21, 2021). Specifically:

> The first kind is one in which a prisoner claims that a state official violated his or her protections defined in the Bill of Rights, *e.g.*, freedom of speech under the First Amendment or freedom from unlawful searches and seizures under the Fourth Amendment. *Id.* The second kind of claim entails the substantive component, which "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The third type of § 1983 claim that a prisoner may bring is for a violation of procedural-due-process rights, which . . . guarantees fair procedure. *Id.*

*Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). The Supreme Court "has cautioned courts to carefully scrutinize [substantive due process claims] . . . 'because guideposts for responsible decision making in this unchartered area are scarce and open-ended.'" *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (quoting *Collins v. City of Harker*

*Heights*, 503 U.S. 115, 125 (1992)). In carefully scrutinizing such claims, the Sixth Circuit has followed the Supreme Court's instruction "'to focus on the allegations in the complaint to determine how [the plaintiff] describes the constitutional right at stake and what the [government actor] allegedly did to deprive [the plaintiff] of that right.'" *Id*. (citation omitted). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (internal quotation marks and quotation omitted).

Here, in the sections of the second amended complaint referring to Plaintiff's due process claims under the Fourteenth Amendment, Plaintiff also cites the Eighth Amendment. Plaintiff broadly alleges that he has suffered cruel and unusual punishment due to Defendants' deliberate indifference. He specifically alleges that Defendants refused to replace his A.V.O. device and failed to assist him when he needed medical care. These allegations mirror those Plaintiff makes in support of his Eighth Amendment claims, and those allegations are properly brought under the Eighth Amendment. The Court therefore finds that the Eighth Amendment is the proper constitutional source for analyzing these allegations, even though Plaintiff couches them as Fourteenth Amendment substantive due process claims. *See Settle*, 2021 WL 1566074, at *9 ("The proper redress for Plaintiff's claims, therefore, would be under the Eighth Amendment rather than 'the more generalized notion of substantive due process.'") (quoting *Albright*, 510 U.S. at 266 (internal quotation marks and quotation omitted)); *see Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) ("Under the circumstances, the plaintiff's section 1983 claim in a case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights."); *see also Smith v. Mich*., 265 F. Supp. 2d 704, 707-08 (E.D. Mich. 2003) (holding that the inmate's

substantive due process claims should be analyzed under the Eighth Amendment). The Court already has determined that Plaintiff's Eighth Amendment deliberate-indifference-to-medical-needs claims against Defendants Keys, Solomon, Moyer, Lewis, Dennis Davis, Rafity, and Unnamed Nurse in their individual capacities will proceed. Further, the Court already has determined that Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendant Keys based on his role in Plaintiff's placement in a nonaccessible cell while housed on death row at RMSI will proceed. Plaintiff's substantive due process claims against Centurion, Solomon, Moyer, Lewis, Davis, and Unnamed Nurse, however, will be dismissed.

### 4. *Equal Protection Claims*

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v Chapter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Because the Equal Protection Clause seeks to ensure that similarly situated people are treated alike, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), an equal protection plaintiff must be similarly situated to his comparators "in all relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Tree of Life Christian Schools v. City of*

*Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (noting that "a[ ] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Here, the second amended complaint alleges that Defendants violated Plaintiff's Fourteenth Amendment right to equal protection "by altering Plaintiff's redress of the courts and preventing him from receiving proper treatment for his medical condition resulting from his ADA condition." (*See* Doc. No. 14 at 46). Elsewhere in the complaint, Plaintiff alleges that Defendants "failed to equally protect his constitutional rights to medical treatment and care while he was a Death Row prisoner . . . ." (*Id*. at 38). These allegations do not set forth how Plaintiff was treated disparately as compared to similarly situated persons or explain how such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. Thus, the Court therefore finds that the Plaintiff's allegations fail to state colorable claims under Section 1983 against Centurion and Solomon, Moyer, Lewis, Centurion, Davis, and Unnamed Nurse in their individual capacities for violation of the Plaintiff's equal protection rights. *See Scarbrough v. Morgan County Bd. of Educ*., 470 F.3d 250, 261 (6th Cir. 2006) (with respect to an equal protection claim under Section 1983, a challenged government action must be motivated by animus or ill will); *Jones v. Fly*, No. 3:20-cv-00783, 2020 WL 5653452, at *3 (M.D. Tenn. Sept. 22, 2020) (finding that prisoner-plaintiff who failed to allege that any defendant "intentionally discriminated against him because of his membership in [a] protected class" failed to state an equal protection claim under Section 1983). Those claims will be dismissed.

B. ANALYSIS OF ADA AND REHABILIATION ACT CLAIMS

The second amended complaint asserts claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(1), and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), against Davis, Keys, Solomon, and TDOC.[7]

The ADA prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The ADA is applicable to state and local government entities, including prisons and county jail facilities. *See Yeskey*, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); *Tucker v. Tenn.*, 539 F.3d 526, 529 (6th Cir. 2008) (applying the ADA to a pretrial detainee's claims against a county jail facility). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The Sixth Circuit evaluates ADA and Rehabilitation Act claims similarly, *see Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000), with one caveat. *See Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240 (6th Cir. Aug. 3, 2022). The ADA and Rehabilitation Act have slightly different causation standards: the ADA requires that discrimination occur "because of" a plaintiff's disability, and the Rehabilitation Act requires that it occur "solely by reason of" a plaintiff's disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc). Despite this one difference, courts frequently analyze together claims brought under the two respective statutes. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687,

---

[7] The second amended complaint alleges that "the Tennessee Department of Correction[] had control of the body of Plaintiff Donald Middlebrooks and did disregard and deny plaintiff['s]ADA request for saf[e]ty to help his handicap situation." (Doc. No. 14 at 27).

697 (6th Cir. 2013) ("The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both."); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922, 924 (6th Cir. 2016) ("[T]he ADA and Rehabilitation Act cover largely the same ground."). For purposes of this initial review, the Court need not address this difference.

Here, the second amended complaint alleges that Defendants Keys, Davis, Solomon, and TDOC failed to ensure the presence of accessible cells in Unit 2 of death row at RMSI, which Plaintiff alleges he needs due to his seizures. The second amended complaint also alleges that these Defendants failed to reasonably accommodate Plaintiff's need for his A.V.O. device, a device that a prison physician previously had ordered for Plaintiff because his "medical needs were so serious." (Doc. No. 14 at 4, 27, 38).

Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate Section 12132. *United States v. Georgia*, 546 U.S. 151, 160 (2006) (holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the states for conduct that violates the Fourteenth Amendment). Thus, the proper defendant to a suit under Title II of the ADA is the public entity or an official acting in his or her official capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." *Id.*; *see also Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities . . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."). Therefore, Plaintiff's ADA claims against any named Defendant in his or her individual capacity must be dismissed.

Likewise, a defendant for purposes of the Rehabilitation Act must be a "program or activity receiving Federal financial assistance." *See id.* Individuals named in their personal capacity do not meet this definition. *See Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) ("[The plaintiff] may not maintain an action under the [Rehabilitation Act] against the individuals identified in his complaint because the [Act] does not impose liability upon individuals." (citing 29 U.S.C. § 794(b) (defining "program or activity" for purposes of the Rehabilitation Act))); *Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*, No. 3:12CV00187, 2012 WL 3808902, at *1, *4 (N.D. Ohio Aug. 8, 2012) (rejecting the plaintiff's Rehabilitation Act claim against a school district "Director of Special Education and Special Services" because "[he] is neither a 'program' nor a recipient of federal aid, and thus plaintiff cannot advance a § 504 claim against him"). Thus, Plaintiff's Rehabilitation Act claims against any named Defendant in his or her individual capacity must be dismissed.

By contrast, TDOC is an appropriate Defendant for Plaintiff's ADA and Rehabilitation Act claims. *See Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *10 (M.D. Tenn. Apr. 23, 2018) (citing 28 C.F.R. § 35.133(a) and finding that prisoner-plaintiff's ADA claim against state prison "public employees or supervisors in their official capacities" are claims against TDOC, and those claims will proceed for further development); *Tarvin v. Lindamood*, No. 1:18-cv-00025, 2019 WL 8016715, at *14 (M.D. Tenn. Sept. 23, 2019) (permitting prisoner-plaintiff's Rehabilitation Act claim against TDOC to proceed beyond summary judgment), *report and recommendation adopted by* 2020 WL 487130 (M.D. Tenn. Jan. 30, 2020).

Title II of the ADA requires the plaintiff to show that: (1) he has a disability; (2) he is a "qualified individual"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" his disability. *Anderson v. City*

*of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing 42 U.S.C. § 12132). The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of the individual. According to the ADA regulations, an individual is "substantially limited" in performing a major life activity if he is either: (1) unable to perform a major life activity that the average person in the general population can perform (*e.g.*, walking), or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity (*e.g.*, being able to walk only for brief periods of time). 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Second, to establish a disability under the ADA, the plaintiff must show more than a physical impairment; he must allege and demonstrate that the identified impairment renders him unable to perform a major life activity or significantly restricts the condition, manner, or duration under which he can perform a major life activity. 42 U.S.C. § 12012(2); *Salim v. MGM Grand Detroit, LLC*, 106 F. App'x 454, 459 (6th Cir. 2004).

As to whether Plaintiff alleges that he has a disability as defined by the ADA, the second amended complaint alleges that Plaintiff's seizures "render[] him unable to operate as a normal individual" (Doc. No. 14 at 35-36); prison medical records identify Plaintiff as a disabled inmate (*id*. at 56-57); and prison physician Dr. Sidberry granted Plaintiff an A.V.O. due to Plaintiff's disability (*Id*. at 38). These allegations, assumed true, suggest that TDOC/RMSI officials recognize that Plaintiff suffers from an impairment, though it does not answer the question of whether that impairment constitutes a disability under the ADA. However, for purposes of the required initial review, it is clear that Plaintiff's allegation is not frivolous.

"Two types of claims are cognizable under [ADA] Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d

471, 488 (6th Cir. 2017). A plaintiff alleging intentional discrimination must "present evidence that animus against the protected group was a significant factor in" the discriminatory conduct, *Anderson*, 798 F.3d at 357. However, if a plaintiff brings a claim for failure to provide a reasonable accommodation, then the court undertakes a different analysis. A plaintiff alleging a failure-to-accommodate claim does not need to make the animus showing required to support a claim of intentional discrimination via disparate treatment. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 909-10 (6th Cir. 2004); *Roell*, 870 F.3d at 488. Instead, "refusal to provide a reasonable accommodation can serve as direct evidence of disability discrimination." *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021) (citing *Roell*, 870 F.3d at 488; *Ability Ctr.*, 385 F.3d at 907-08). This is because "'[a] regulation implementing Title II requires a public entity to make 'reasonable modifications' to its 'policies, practices, or procedures' when necessary to avoid . . . discrimination[] based on disability." *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 159 (2017)); *see* 28 C.F.R. § 35.130(b)(7)(i); *see also Alexander v. Choate*, 469 U.S. 287, 301-02 (1985) ("[T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made [pursuant to § 504]."). When a plaintiff shows that the proposed modification is needed to avoid the denial of services or benefits, the causation requirement is satisfied. *Madej v. Maiden*, 951 F.3d 364, 373 (6th Cir. 2020). As a result, "the denial of meaningful access to medical care, bathroom facilities, or meals" through a refusal to make a needed modification "could support the required prima facie showing." *Keller*, 860 F. App'x at 386.

The Court finds that the allegations in the second amended complaint state colorable claims for failure to provide a "reasonable modification" under Title II of the ADA, and under the Rehabilitation Act, against TDOC. These claims will proceed against TDOC.

## IV. CONCLUSION

As explained herein, "Plaintiff's Motion to Add Dennis Davis as a Defendant in First Amendment Violation" (Doc. No. 15) will be denied. Plaintiff's Motion to Reconsider (Doc. No. 16) will be denied as moot.

Having screened the second amended complaint pursuant to the PRLA, the Court finds that Plaintiff's allegations state colorable Eighth Amendment deliberate-indifference-to-medical-needs claim claims under Section 1983 against Defendants RMSI Centurion Kyla Solomon, Disciplinary Sergeant f/n/u Moyer, RMSI Warden of Security Earnest Lewis, RMSI Unit Manager Dennis Davis, Officer f/n/u Rafity, and Unnamed Nurse in their individual capacities. These claims shall proceed.

Further, Plaintiff's allegations state colorable claims under the the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(1), and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), against TDOC. These claims also shall proceed.

The following federal claims, however, will be dismissed: Plaintiff's substantive due process claims under Section 1983 against Centurion and Solomon, Moyer, Lewis, Davis, and Unnamed Nurse in their individual capacities; and Plaintiff's equal protection claims under Section 1983 against Centurion and Solomon, Moyer, Lewis, Centurion, Davis, and Unnamed Nurse in their individual capacities; and Plaintiff's ADA and Rehabilitation Act claims against Keys, Davis, Solomon, and Rafity in their individual capacities.

An appropriate Order will be entered.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE