IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DONALD MIDDLEBROOKS )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LISA HELTON, COMMISSIONER, )<br>ET AL )<br>    Defendants. ) | Civil Action No. 3:23-cv-0054<br>Judge Richardson/Frensley |

## REPORT AND RECOMMENDATION

Pending before the Court is a motion filed by the pro se prisoner Plaintiff, Donald Middlebrooks seeking a preliminary injunction in this matter. Docket No. 23. The Defendants have filed a response in opposition to the motion (Docket No. 33), and the Plaintiff has filed a reply, (Docket No. 37). For the reasons set forth herein, the undersigned recommends the motion be **DENIED**.

## BACKGROUND

The Plaintiff, an inmate on death row at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee filed this action under 42 U. S. C. § 1983 against various Defendants. Docket No. 1. In addition, he raised alleged violation of Tennessee state law. *Id.* On initial review, the Court found that the Plaintiff's allegations state colorable claims under §1983 for deliberate indifference to medical needs against Defendant Keys in his individual capacity; an official capacity claim for injunctive relief against the relevant TDOC official based on RMSI's inmate medical device policy; conditions of confinement claim against Defendant Keys based on his role in Plaintiff's placement in a non-accessible cell while housed on death row; and official capacity claim for injunctive relief against the relevant TDOC official based on an alleged TDOC

or RMSI policy for failing to provide accessible housing to inmates on Tennessee's death row. Docket No. 13. The Court further indicated it would exercise supplemental jurisdiction over Plaintiff's state law claims and allow them to proceed for further development. *Id.* The Court allowed Plaintiff the opportunity to amend his complaint (Docket No. 12) which he did (Docket No. 14) and the Court entered a screening order under the Prison Litigation Reform Act ("PLRA") identifying the Plaintiff's second amended complaint as the operative complaint and allowing certain of the Plaintiff's claims to proceed while others were dismissed. Docket No. 19.

The Plaintiff thereafter filed the instant motion for injunctive relief. Docket No. 23. Specifically, the Plaintiff seeks an order requiring Defendants to "immediately and without delay replace the Medically Prescribed Device that was taken from him without the benefit of Medical Consultation or recommendation. *ie*: The back pad the plaintiff had in his care and custody for approximately four (4) years to prevent post seizure damage due to trauma cause by the seizures themselves." *Id.* The device in question is an air mattress. *Id.* The Plaintiff asserts that the mattress was prescribed by a doctor and though his medical needs have not changed, the mattress was taken from him, and the injunction is "necessary to reduce the imminent danger he is currently suffering without this device." *Id.*

The Defendants have filed a response in opposition to the motion for injunctive relief. Docket No. 33. They have additionally filed a declaration of Michael Keys, the Associate Warden of Treatment in support of their response. Docket No. 33-1. The Defendants assert that the Plaintiff lacks sufficient evidence to demonstrate a likelihood of success on the merits, that many of his contentions are directly refuted by the testimony of Mr. Keys and that the Plaintiff has failed to demonstrate how he will suffer irreparable harm without the mattress and the remaining factors in evaluating a request for preliminary injunction weigh in favor of denying Plaintiff's motion.

2

Docket No. 33.

## LAW AND ANALYSIS

### A. Standard of Review

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial of the merits can be had. *Certified Restoration Dry Clean Network, LLC v. Tenke Corp.*, 511 F. 3d 535, 542 (6th Cir. 2007)(citations omitted). The decision as to whether to issue a preliminary injunction is committed to the trial court's discretion. *N. E. Ohio Coal v. Blackwell*, 467 F. 3d 999, 1009 (6th Cir. 2006)(*Patio Enclosures Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002). Preliminary injunction is an extraordinary remedy to be applied only in the limited circumstances which clearly demand it. *Leary v. Daeschner*, 228 F. 3d 729, 739 (6th Cir. 2000).

The moving party has the burden of proving that the circumstances "clearly demand" a Preliminary Injunction. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F. 3d 566, 573 (6th Cir. 2002). The court must balance four factors in deciding whether to issue a preliminary injunction "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retied Employees Ass'n. v. Schimmel*, 751 F. 3d 427, 430 (6th Cir. 2014)(*en banc*)(internal quotation marks omitted).

These four factors are "factors to be balanced, not prerequisites that must be met." *Michael v. Futhey*, 2009 WL 4981688, at *17 (6th Cir., December 17, 2009)(quoting *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F. 3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is the likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002)("[t]he demonstration of some irreparable injury is a *sine*

3

Case 3:23-cv-00054   Document 64   Filed 12/21/23   Page 3 of 10 PageID #: 694

*qua non* for issuance of an injunction."); *see also Winter v. Natural Resources Defense Council, Inc.,* 555 U. S. 7, 22-23, 129 S. Ct. 365, 172 L. Ed 2d 249 (2008)(rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction")(emphasis in original). "A finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. National Board of Medical Examiners*, 225 F. 3d 620, 625 (6th Cir. 2000).

"Pro se litigants have the right to be heard in federal courts and represent themselves. Derived directly from section 35 of the Judiciary Act of 1789, 28 U.S.C. § 1654 guarantees the right to proceed pro se in civil actions in federal courts. It provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Greene v. Frost Brown Todd, LLC*, 856 F. 3d 438, 439 (6th Cir. 2017).

While pro se litigants must comply with the procedural rules that govern civil cases, a pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Hank McNeil v United States*, 508 U. S. 106, 113 (1993); *Haines v. Kerner*, 404 U. S. 519, 520-21 (1972).

B. **Plaintiff's Motion**

The Plaintiff asserts that he was prescribed and used a mattress pad for approximately four (4) years to prevent post seizure damage due to trauma caused by seizures. Docket No. 23. He asserts that the device was taken from him without medical consultation or recommendation. *Id*. He contends his medical needs have not changed since filing his Complaint and that the Defendants have refused to replace the removed device with "an available, suitable device when one is

4

available." *Id.* He finally states that he is in imminent danger of harm without the device in that any future episode would likely result in serious harm to his person. *Id.*

Plaintiff's seizure disorder is not in dispute. Docket No. 33-1, ¶4. The Plaintiff has been provided medical treatment for his seizure disorder which included most recently on May 25, 2021, approval of an egg crate mattress associated with back pain. *Id.* at ¶ 8. The mattress was approved for a period of one year expiring on May 27, 2022. *Id.* Though the approval expired on that date, the mattress was not removed at that time. *Id.*

In November 2022, as a result of a directive from TDOC's central office all egg carton mattresses including Plaintiffs were removed as they were regarded as a safety and security risk for being non-flame retardant. *Id.* ¶ 11. There is no record of Plaintiff requesting any sick calls in 2023 concerning back pain or requesting a replacement mattress related to the order which expired May 27, 2022. *Id*. at ¶11-13

The Plaintiff filed a reply to the Defendants' response describing his seizures and expressing concern about the Defendants' knowledge of his medical condition as a potential violation of federal laws protecting health information. Docket No. 37. With respect to the standard for the issuance of injunctions, Plaintiff asserts that he has a strong likelihood of success on the merits as the device was not denied by a physician but individuals without medical training or license and that he would suffer irreparable injury because he continues to suffer from the seizure disorder which causes serious harm to him. Docket No. 37, p. 3. He contends that there would be no harm to any other individuals by providing him the requested mattress and that the public interest is served by treating inmates humanely and addressing their medical needs. *Id.*

### C. Factors to Consider When Granting Injunctive Relief

### 1. Whether the movant has a strong likelihood of success on the merits.

The Plaintiff argues that he has a strong likelihood of success on the merits because a decision was made to remove his mattress without the benefit of medical consultation or recommendation. Docket No. 23. The Defendants contend that the Plaintiff cannot establish this factor based on his failure to include any factual evidence in support of his motion including, importantly, any expert medical proof establishing his need for a special mattress. Docket No. 33, pp. 5-8. They submit that the declaration filed in support of their opposition shows that the mattress pad was not medically related to Plaintiff's seizures and that the removal of the pads was not directed explicitly at the Plaintiff alone but rather was as to all inmates due to security and safety reasons. *Id.* at p. 8.

To establish a likelihood of success on the merits, the Plaintiff must show that the Defendants acted with " 'deliberate indifference' to a substantial risk of serious harm*." Mingus v Butler*, 591 F. 3d 474, 480 (6th Cir. 2010)(*quoting Farmer v Brennan*, 511 U. S. 825, 835-36 (1994)). "Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamundi*, 680 F. 3d 617, 624 (6th Cir. 2012). To establish deliberate indifference, the Plaintiff must establish both an objective and subjective component. *Wilson v Seiter,* 501 U. S. 294, 298 (1991). The objective component requires that the Plaintiff show the existence of a sufficiently serious medical need. *Blackmore v. Kalamazoo City*, 390 F. 3d 890, 895 (6th Cir. 2004). The subjective component requires Plaintiff to show that prison officials acted with "a sufficiently culpable state of mind in denying medical care." *Id.* The officials must "know of and disregard an excessive risk to inmate health or safety." *Farmer,* 511 U. S. at 837. Not every claim by a prisoner that he has received

6

Case 3:23-cv-00054    Document 64    Filed 12/21/23    Page 6 of 10 PageID #: 697

inadequate medical treatment states a violation of the Eighth Amendment. *Estelle v Gamble*, 429 U. S. 97, 105 (1976). Further, differences in judgment between an inmate and a prison medical personal regarding appropriate medical treatment rarely will support a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F. 3d 151, 154-155 (6th Cir. 1995). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." *Westlake v Lucas*, 537 F. 2d 857, 860, n. 5. (6th Cir. 1976).

It is undisputed that Plaintiff had previously been approved an egg crate mattress as had numerous other inmates at RMSI. Docket No. 33-1, p. 1. However, it is also undisputed that the order for the mattress was approved for a period of one year expiring on May 27, 2022. *Id.* at p. 2. Further, Tennessee Department of Correction policies allow for doctor's approval of medical equipment such as an egg crate mattress to be overridden if it implicates a security concern at the facility. *Id.* at p. 1. Plaintiff has offered no evidence to contradict those three critical factors.

Because Plaintiff's order for the mattress had expired at the time the mattresses were removed; because the mattresses were removed from all intimates based on alleged security concern as is within the authority of the Department of Correction regulations; and because the Plaintiff has been provided other treatments for his documented seizure disorder including medication and a safety helmet (Docket No. 33-1, p. 1), Plaintiff has not established a strong likelihood of success on the merits that would establish deliberate indifference to his medical needs.

Middlebrooks has not submitted any evidence to show that he is being denied medical care. However, the allegations in his complaint as well as the declarations supporting the opposition to the instant motion suggest that he has received at least some medical care. Further, there is no

7

current medical order or expert evidence to support Plaintiff's claim that he needs the mattress or more importantly, that the care he is receiving is inadequate. As a result, there is simply not sufficient evidence to demonstrate a likelihood of success on the merits at this juncture. As a result, this factor weighs against granting the relief Plaintiff seeks.

2. **Whether the movant would suffer irreparable injury without the injunction.**

When a right secured under the Constitution is threatened or impaired, "a finding of irreparable injury is mandated," *Bonnell v. Lorenzo*, 241 F. 3d 800, 809 (6th Cir 2001), or is at the very least presumed. *Vitolo v. Guzman*, 999 F, 3d 353, 360 (6th Cir 2021). To obtain injunctive relief, a "Plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence actual threat of such injury." *Patio Enclosures Inc. v. Herbst,* 39 F. Appx 964, 969 (6th Cir 2002).

The Plaintiff argues that without injunctive relief, "any future seizure can and most likely will result in serious harm to the Plaintiff's person." Docket No. 23, p. 2. However, it is undisputed that the Plaintiff has been without the mattress pad for over a year and went many months before initiating this action after the mattress was removed. According to the Defendants, the mattress was prescribed for back pain rather than for preventing post seizure damage. Docket No. 33-1, p. 2. Further, it does not appear that he has suffered any harm related to his seizures in the absence of the mattress pad. For all these reasons, the Plaintiff has not established that irreparable injury will result if he does not obtain injunctive relief.

3. **Whether issuance of the injunction would cause substantial harm to others and the public.**

The balancing of harms required by the third factor also does not weigh in favor of the requested relief, and Plaintiff has not persuasively demonstrated that a public interest would be advanced by the requested relief as is required for the fourth factor. *National Hockey League*

8

*Players Ass'n v. Plymouth Whalers Hockey Club*, 372 F. 3d 712, 720 n. 4 (6th Cir. 2003). Finally, absent extraordinary and urgently compelling reasons, the Court will not intervene in matters such as the day-to-day operations in a correctional facility. *See Kendrick v. Bland*, 740 F. 2d 432, 438, n. 3 (6th Cir. 1984).

The interest of any third parties and the public weigh against issuance of the requested injunction. While it is true that the public interest is furthered by enforcement of constitutional rights, in the absence of a likely constitutional violation (as here), courts should avoid putting themselves in the middle of the administration of state prison health care systems. *Reinhart v. Scutt*, 509 F. Appx. 510, 516 (6th Cir. 2013). Thus, the public interest in effective prison administration will weigh against injunctive relief if there has not been a sufficient showing of constitutional harm. Because Plaintiff has not made a sufficient showing to overcome that interest at this stage of the litigation, this factor weighs against granting the requested injunction.

## CONCLUSION

The four factors the Court that the must consider in deciding whether to order injunctive relief all weigh against grating Plaintiff's motion. As a result, and for the reasons set forth herein, the undersigned recommends that the Plaintiff's motion for preliminary injunction (Docket No. 23) be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**