# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

DONALD MIDDLEBROOKS      )

)

     **v.**      )      **Case No. 3:23-cv-00054**

)

LISA HELTON *et al.*      )

**TO:   Honorable Eli J. Richardson, United States District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

This prisoner civil right action has been referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court. *See* Order entered June 14, 2023 (Docket Entry No. 19).[1]

Presently pending before the Court is the motion for summary judgment (Docket Entry No. 107) filed by Defendants Tennessee Department of Correction, Ernest Lewis, Michael Keys, Dennis Davis, Raymond Moyer, and Amy Rafferty. Plaintiff opposes the motion. For the reasons set out below, the undersigned respectfully recommends that the motion be **GRANTED**.

## I. PROCEDURAL BACKGROUND

Donald Middlebrooks ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") currently confined on death row at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. On January 20, 2023, he filed this lawsuit *pro se* and *in forma pauperis* against the TDOC Commissioner, the RMSI Warden, and several other prison officials, seeking relief under 42 U.S.C. § 1983 based on allegations that he had experienced mistreatment and violations of his constitutional rights at the RMSI. *See* Complaint (Docket Entry No. 1). Plaintiff thereafter made several filings that were construed as amendments to his complaint. *See* Docket

---

[1] On November 26, 2024, this action was assigned to the undersigned upon the recusal of the originally assigned Magistrate Judge. (Docket Entry No. 113.)

Entry Nos. 9 and 14-16. Generally, Plaintiff complains about his conditions of confinement on death row and his medical treatment by prison staff.

Upon initial review of the lawsuit pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court dismissed several claims and defendants but permitted the lawsuit to proceed on the following claims:

(1) an Eighth Amendment claim against Warden of Treatment Michael Keys ("Keys"), Kyla Solomon ("Solomon"), Disciplinary Sergeant Raymond Moyer ("Moyer"), Warden of Security Earnest Lewis ("Lewis"), Unit Manager Dennis Davis ("Davis"), Officer Amy Rafferty ("Rafferty"), and an unnamed nurse, each sued in their individual capacity, based on Plaintiff's allegations that Defendants were deliberately indifferent to his serious medical needs;

(2) an Eighth Amendment conditions-of-confinement claim against Defendant Keys in his individual capacity based on his role in Plaintiff's placement in a non-accessible cell;

(3) an official-capacity claim for injunctive relief against the relevant TDOC official based on RMSI's inmate medical device policy;

(4) claims against TDOC under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(1), and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") based on allegations that TDOC failed to provide accessible housing to inmates on death row; and,

(5) state law claims for violations of Tennessee Code Annotated §§ 41-1-408 and 409.

*See* Memorandum Opinion (Docket Entry No. 18) and Order (Docket Entry No. 19) entered June 14, 2023.[2]

---

[2] With respect to the state laws claims, the Court noted that it "will exercise supplemental jurisdiction over Plaintiff's state-law claims and allow them to proceed past this initial review so that the record can be more fully developed for the purposes of determining whether such claims are viable." (Docket Entry No. 19 at 3.)

After the named Defendants filed answers, *see* Docket Entry Nos. 31 and 51, the Court dismissed Defendant Solomon from the case upon his unopposed motion. *See* Order entered January 22, 2024 (Docket Entry No. 78).[3] Thereafter, scheduling orders were entered, setting out deadlines for pretrial proceedings and also scheduling a jury trial for May 20, 2025. *See* Docket Entry Nos. 82, 83, 98, 100, and 103. All pretrial deadlines have now passed except for those concerning the jury trial.

## II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff has been confined at RMSI since 1989. (Docket Entry No. 14 at 3.) Plaintiff asserts that he suffers from several medical conditions that are well known to prison staff and for which he has received medical treatment at the RMSI. He experiences grand mal seizures, which can render him unconscious and put him at risk of injury due to falling. He receives prescribed medication for this condition and has also been provided with a protective helmet that he is permitted to keep on his person so that he can put it on if he feels the onset of a seizure. Plaintiff also suffers from back and spine pain. He also alleges that he has also experienced rectal bleeding at times.

At some point prior to 2022, a now deceased prison doctor, Dr. Sidberry, issued a medical order, or "AVO," that permitted Plaintiff to have an "eggshell mattress"[4] in his cell to alleviate his back pain. Plaintiff alleges that, on November 23, 2022, security staff removed the eggshell mattress pad from his cell despite his protest that he had a medical order for the mattress pad. He further alleges that he was told that it was too costly to replace the mattress pad. Plaintiff asserts that he has suffered continued pain and rectal bleeding since the removal of the mattress pad. He specifically

---

[3] Plaintiff has not amended his compliant to identify the unnamed "Jane Doe" nurse or made any type of filing that identifies her.

[4] Although not clearly explained by either party, the term "eggshell mattress" appears to refer to a mattress pad that provides additional foam cushioning on top of the regular mattress.

3

identifies Defendants Rafferty and Keys as having been involved in the removal of the mattress pad and alleges that Defendants Lewis, Moyer, and Davis were aware of his continued need for the medically ordered mattress pad but took actions to deny or interfere with his medical treatment.

Plaintiff also alleges that, on an unknown date, he had a seizure that rendered him unable to move and that he "was laying in his human wastes unable to move" when the medical staff and Defendant Moyer arrived at his door and wanted him to sign a withdrawal slip to received medical help, which he could not do because of his condition at the time. (Docket Entry No. 14 at 4.) He asserts that Defendant Keys, when alerted to the matter, "called medical and asked the[m] to have a medical withdraw filled out prior to responding to [Plaintiff's] seizures," but told Plaintiff that the next time he needed to sign the form even if he "needed to crawl through his human waste." (Docket Entry No. 1 at 10 and similarly stated in Docket Entry No. 14 at 4).

Plaintiff finally alleges that the living conditions in Unit 2 do not accommodate handicapped inmates and that prison officials have historically been opposed to remedying the problem. He alleges that Defendant Lewis ordered the removal from the unit of wheelchairs that were used to transport Plaintiff to medical when he had a seizure and that were used by other handicapped inmates. (Docket Entry No. 14 at 11.) He alleges that the cells in Unit 2 do not have handrails around the toilet, shower, and bed, that the emergency call button in the cells are located near the door and are of no use if the inmate is unable to walk from his bed to the door, that there is no safety step in front of the shower, and that there is not a covering on the floor of his cell to prevent him from injuring himself prior to or during a seizure. (*Id*. at 11 and 70.)

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure, contending that there are no genuine issues of material fact in dispute and that Plaintiff's claims should be dismissed as a matter of law. Defendants supports their motion with: (1) a memorandum of law (Docket Enty No. 107-1); (2) a statement of undisputed material facts ("SUMF") (Docket Entry No. 107-2); (3) excerpts from Plaintiff's deposition (Docket Entry No. 107-8); and, (4) the declarations, and exhibits attached thereto, of Dr. Nwozo (Docket Entry No. 107-3), Defendant Rafferty (Docket Entry No. 107-4), Shanrekia Ward (Docket Entry No. 107-5), Defendant Keys (Docket Entry No. 107-6), and Kenneth Nelson (Docket Entry No. 107-7).

Defendants raise four arguments in support of their motion. First, they argue that Plaintiff failed to exhaust administrative remedies for his claims through the RMSI prison grievance process prior to filing his lawsuit, as is required by the Prison Litigation Reform Act of 1996 ("PLRA", 42 U.S.C. § 1997e. Defendants assert that the only issue about which Plaintiff filed a prison grievance is the issue of the removal of the mattress pad, but that he failed to complete the full grievance process about this issue. Second, Defendants argue that the undisputed evidence shows that all eggshell mattress pads, not just the one in Plaintiff's cell, were removed from Unit 2 as a security measure because of concerns about the flammability of the mattress pads. Defendants argue that Plaintiff was examined by a prison physician after the removal of the mattress pad and that the physician's assessment was that a special mattress for Plaintiff was not required. Defendants argue that there is no evidence that Plaintiff was treated with deliberate indifference or otherwise treated in a manner that violated his Eighth Amendment rights. Third, Defendants argue that there is no evidence before the Court that shows that TDOC has violated the ADA or Rehabilitation Act with respect to Plaintiff's housing in Unit 2. Finally, Defendants contend that the Court should not

5

exercise supplemental jurisdiction over Plaintiff's state law claims if summary judgment is granted to Defendants on the federal claims. Alternatively, they contend that they contend that the state law claims nonetheless lack merit. (Docket Entry No. 107-1.)

Plaintiff's response to the motion is two-fold. First, he asserts that Defendants rely upon portions of his medical records that he contends were illegally obtained in violation of the Healthcare Insurance Portability and Accountability Act of 1996 ("HIPAA"). To remedy this alleged wrongdoing, he has filed a motion to strike the motion for summary judgment (Docket Entry No. 110) and a request for sanctions and criminal charges (Docket Entry No. 111). Plaintiff's second avenue of response is a direct response to the arguments raised by Defendants in their motion. (Docket Entry No. 112.) Plaintiff contends that his claims have merit and should be heard by a jury. In support of his response, Plaintiff submits (1) the affidavit of inmate John Hall, who was involved in a prior case brought in this Court against TDOC officials regarding conditions of confinement in Unit 2, *Hall v. Trump, et al.*, Case No. 3:19-cv-00628, and (2) excerpts from a 2021 deposition of Dr. Sidberry that was conducted as part of discovery in another case brought in this Court against TDOC officials regarding conditions of confinement in Unit 2, *Hugueley v. Parker, et al.*, Case No. 3:19-cv-00598. (Docket Entry No. 112-1.)

Defendants respond in opposition to Plaintiff's filings about HIPAA violations by disputing that any HIPAA violations or other wrongdoing has occurred regarding their access to Plaintiff's relevant medical records. (Docket Entry No. 114).[5] Defendants further reply to Plaintiff's response to the motion for summary judgment, arguing that Plaintiff has not actually disputed the evidence

---

[5] By a separately entered order, the Court has addressed and denied Plaintiff's motion to strike and request for sanctions and criminal charges.

that they rely upon as support for their motion and has not rebutted their arguments for summary judgment. (Docket Entry No. 117.)

Also before the Court is Plaintiff's "answer" to Defendants' reply, which the Court construes as a sur-reply. (Docket Entry No. 118.) In this filing, Plaintiff addresses Defendants' PLRA exhaustion defense and reiterates his arguments as to why Defendants are not entitled to summary judgment.

## IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe*

7

*Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

## V. ANALYSIS

Plaintiff's allegations were sufficient to permit the claims at issue to move past the initial screening of the lawsuit under 28 U.S.C. §§ 1915(e)(2) and 1915A. However, the threshold for a claim to pass the initial screening is significantly lower than the threshold to survive a properly supported motion for summary judgment.[6] After review of the parties' summary judgment arguments and the record that is before the Court, the Court finds that genuine issues of material fact do not exist that require resolution of Plaintiff's claims at trial. Summary judgment in favor of Defendants is therefore warranted on all claims raised by Plaintiff.

### A. Plaintiff's Response to the Summary Judgment Motion

As an initial matter, the Court notes that Plaintiff's response to the motion for summary judgment fails to include a response to Defendants' SUMF. Local Rule 56.01(c) requires that the non-moving party file a specific response to the moving party's SUMF. Plaintiff's failure to respond triggers the application of Local Rule 56.01(f), which provides that a non-moving party's failure to timely respond to the moving party's statement of undisputed material facts shall cause the facts

---

[6] Plaintiff argues that the Court indicated during the initial screening that some of his claims are "beyond summary judgment" and should proceed to a jury. (Docket Entry No. 112 at ¶¶ 1 and 3.) This argument misreads the Court's Memorandum Opinion, which simply does not contain any language supporting Plaintiff's argument.

8

asserted in the statement of undisputed material facts to be deemed undisputed for the purposes of summary judgment. Accordingly, the Court is, within its discretion, permitted to rely upon the facts set forth by Defendants in their SUMF as the undisputed facts.

## B. PLRA Exhaustion Defense

Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law must first exhaust all available administrative remedies before filing a lawsuit about the conditions. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). If there is a grievance procedure available to inmates, the prisoner plaintiff must present his grievance through "one complete round" or through all the steps of the administrative grievance procedure in order to satisfy the exhaustion requirement. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006); *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). Full exhaustion is required even if the inmate believes the grievance process is futile and will yield no relief. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that a defendant must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense of failure to exhaust is raised and supported, the prisoner plaintiff must present evidence showing that he has complied with the PLRA's requirement of exhaustion. *Napier*, 636 F.3d at 225.

Defendants set forth evidence that TDOC Policy #501.01 (Inmate Grievance Procedures) provides for an established inmate grievance process that permits inmate to file written grievances about prison issues. *See* Declaration of Shanrekia Ward (Docket Entry No. 107-5) at ¶¶ 4-15. Policy #501.01(IV)(I) defines a grievance as "a written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an

9

inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate complainant." (*Id.* at 9.) Pursuant to this policy, a three-level process exists that provides for a grievance to be subjected to an initial review by the relevant prison supervisor and grievance chairperson and provides for a two-level appeal process of grievances that are denied. (*Id.* at ¶¶ 13.) An explanation of the grievance procedure is further set out in the inmate handbook that is provided to TDOC inmates. (*Id.* at ¶ 4.)

Through the declaration of Ward and attached exhibits, Defendants present evidence that Plaintiff did not file any grievances between October 31, 2021, and January 20, 2023, about his need for a handicap accessible cell, his need for modifications to his cell, or his need for a wheelchair in his unit. (*Id.* at ¶ 21.) Defendants further present evidence that, although Plaintiff did file a grievance about the removal of the eggshell mattress pad, his did not pursue this grievance though all available levels of the grievance system. (*Id.* at ¶ 19.) Defendants show that Plaintiff's grievance was denied at the initial level and that Plaintiff appealed the initial response to the grievance chairperson and the RMSI warden pursuant to the second step of the grievance policy, but Plaintiff did not take any action to further appeal the grievance to the final, thirds step after the warden concurred with the dismissal of the grievance. (*Id.* at ¶¶ 19-20.) *See also* SUMF (Docket Entry No. 107-2) at ¶¶ 9-13 and 15-19.

This evidence is unrebutted by Plaintiff and is sufficient to satisfy Defendants' burden of setting forth and supporting a PLRA exhaustion defense that Plaintiff did not fully exhaust his available grievance remedies prior to filing his lawsuit. In the face of this affirmative evidence, Plaintiff must present "significant probative evidence" in support of his rebuttal to the exhaustion defense. *Napier*, 636 F.3d at 225.

10

Plaintiff's rebuttal to Defendants' PLRA exhaustion defense is contained in his Sur-reply and consists of an argument that the RMSI grievance process is practically ineffective. Plaintiff contends that he did initiate a proper grievance about the removal of the eggshell mattress pad but that it was not timely responded to by prison officials. He further asserts that in two other cases involving inmates at the RMSI, *Hall v. Donald Trump*, Case No. 3:19-cv-00628, and *Hugueley v. Parker*, Case No. 3:19-cv-00598. the Court found that the grievance procedure "is basically non-existent. It does not work, it is ineffective and a waste of time." (Docket Entry No. 118 at 2.) Finally, Plaintiff takes issue with the effectiveness of a grievance system in which prison officials are tasked with "policing" or reviewing the acts of other prison officials and in which prison official can simply not hear a grievance by deeming the matter non-grievable.

Although not labeled as such, Plaintiff's argument is essentially that the RMSI grievance system is unavailable to him. "[T]he PLRA's exhaustion requirement hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Coopwood v. Wayne Cnty., Michigan*, 74 F.4th 416, 422 (6th Cir. 2023) (citations and internal quotations omitted). The Supreme Court in *Ross v. Blake*, 578 U.S. 632 (2016), clarified that there are some factual scenarios in which an inmate's attempt to use the grievance process is so compromised that the administrative remedy is made effectively "unavailable" and, thus, the failure of an inmate to exhaust available remedies is excused. However, these scenarios are limited. An administrative remedy is not "available" only when: (1) the grievance process "operates as a simple dead end," (2) the grievance process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643-44.

As previously stated, however, there is no futility exception to the exhaustion requirement. Therefore, for the Court to review an inmate's argument that a grievance procedure is "unavailable" under *Ross*, the inmate must first show that he made "some affirmative efforts to comply with the administrative procedures." *Napier*, 636 F.3d at 223; *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022); *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). An inmate may not simply ignore the grievance process and then later argue that the process is ineffective or unavailable. Simply put, the inmate must have done "something" to pursue a grievance remedy to raise the issue of the availability of the remedy. *Napier*, 636 F.3d at 224.

In the instant case, the undisputed evidence shows that Plaintiff did not pursue grievances about being denied an accessible cell or a cell with handicapped assistive aides, about the lack of wheelchairs in the unit, or about interactions with prison staff concerning anything other than the removal of the eggshell mattress pad. Accordingly, his claims based upon these issues have not been exhausted under the PLRA. Because Plaintiff has not shown that he made any affirmative efforts to pursue grievances about these issues, the Court need not proceed to the step of analyzing whether the RMSI grievance procedure was available with respect to grievances about these issues. *See Napier*, 636 F.3d at 223-224; *Lynn v. Melton*, No. 16-6109, 2017 WL 11408171, at *2 (6th Cir. Mar. 30, 2017) ("There is no genuine dispute of material fact as to the lack of affirmative efforts to follow the [grievance] procedures, and [plaintiff] therefore gives no reason to proceed to the question of unavailability."); *Mayes v. Rodela*, No. 1:20-cv-00057, 2024 WL 4227047, at *2 (M.D. Tenn. Sept. 18, 2024) (Campbell, C.J.) ("Here, Plaintiff fails to direct the Court to any evidence in the record from which a reasonable juror could find that he made affirmative efforts to comply with the TDOC's administrative procedures for the grievance process. As such, the Court does not reach the issue of whether the grievance process was unavailable to Plaintiff."). Defendants are entitled under

12

the PLRA to summary judgment in their favor on any claims based on these issues based on his lack of exhaustion.

The PLRA exhaustion defense with respect to the removal of the eggshell mattress pad claim is not as readily resolved. Nonetheless, based on the undisputed evidence that is before the Court, the end result is the same, and Defendants are entitled to summary judgment on this claim based on lack of PLRA exhaustion.

Plaintiff filed a grievance on November 23, 2022, Grievance # 22-0401/00356739, about the removal of his eggshell mattress pad. From the evidence that has been provided to the Court, the grievance was processed and it appears that, on or about November 29-30, 2022, Plaintiff was provided at the first level of the grievance process with both (1) a supervisor's initial response that the mattress pad was removed because it did not meet the fire safety code and (2) a notification from Cpl. Ward, the grievance chairperson, that the grievance was inappropriate to the grievance process because it addressed a diagnosis by a medical professional and also addressed multiple issues. (Docket Entry No. 107-5 at 41-49.) On December 2, 2022, Plaintiff appealed the first-level response and the grievance moved to the second level of the grievance process. (*Id*. at 40.) At the second level, Cpl. Ward found that the grievance was inappropriate per the grievance policy and forwarded the grievance appeal to the warden, who on December 28, 2022, checked on the grievance response form that that he "agrees with the proposed response" and stated on the form, "concur with supervisor's response." (*Id*.) Although the grievance policy required that the warden's response be sent back to the grievance chairperson within seven days, the response was not returned to the grievance chairperson until March 23, 2023, and was not provided to Plaintiff until March 28, 2023. (*Id*. at 40 and 50.) Plaintiff thereafter did not seek to appeal the second level response by initiating a

third level appeal to the TDOC Assistant Commissioner of Operations, and the grievance was deemed closed on April 22, 2023. (*Id*. at ¶ 19 and 40.)

Plaintiff has not presented any evidence or argument in dispute of these facts. Instead, he argues that his filing of the initial grievance and his appeal to the second level should be deemed sufficient to satisfy the PLRA's exhaustion requirement because prison officials did not timely complete the grievance process and because the grievance chairperson deemed his grievance inappropriate. (Docket Entry No. 118 at 2.) While Plaintiff's argument is not an unreasonable one to make, it fails to account for the fact that he had the opportunity to initiate an appeal of his grievance to the third level but did not take that step.

Plaintiff had two occasions when he could have initiated a third level appeal and thus completed the full grievance process. First, Plaintiff was specifically alerted to his ability to appeal the warden's response when he received the warden's response on March 28, 2023. (Docket Entry No. 107-5 at 40 and 50.) Second, during the period prior to March 28, 2023, when Plaintiff had yet to receive a timely response from the warden to his second level appeal, he was nonetheless permitted by the grievance policy to advance the matter to the third level despite the lack of a response. TDOC's grievance policy specifically provides inmates with an available avenue to continue the grievance process even if they are not provided with a timely response. (Docket Entry No. 107-5 at 11) (TDOC Policy #501.01(VI)(D) ("if a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response.")). The lack of a timely response did not foreclose the grievance process because Plaintiff still had a remedy under the TDOC grievance policy to advance his grievance to the next stage. In such a scenario, the mere lack of a timely response to an inmate's grievance does not render the grievance procedure

14

unavailable. *Trivette v. Tennessee Dep't of Correction*, 739 F. Supp. 3d 663, 703 (M.D.Tenn. 2024) (finding that a TDOC inmate could have appealed a grievance to the next level despite the lack of any response and, thus, the inmate's grievance was not exhausted); *Mitchell v. Tennessee*, No. 3:17-cv-00973, 2023 WL 2228979, at *5 (M.D. Tenn. Feb. 24, 2023) (Crenshaw, C.J.) ("Under the [TDOC Policy], if the window for [plaintiff] to receive a response to a Level I grievance closed without a response, he was free to pursue his appeal to the next two levels in the grievance process. The administrative remedy remained available for him to exhaust even if he did not receive a timely response from the chairperson.").

The Court further notes that the grievance process itself contemplates that inmates may file grievances about matters that are deemed by the grievance chairperson to be non-grievable. (Docket Entry No. at 11-12 (Policy #501.01(VI)(H)). *See e.g. Maher v. Tennessee*, No. 16-1314-JDT-cgc, 2020 WL 1325363, at *7 (W.D. Tenn. Mar. 20, 2020) (rejecting inmate's argument that grievance process was not available to him because grievances about medical diagnosis are deemed inappropriate under the TDOC grievance policy).

The Sixth Circuit has been clear that "to comply with the PLRA's exhaustion requirement, an inmate must take advantage of each step the prison holds out for resolving the claim internally." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citation and internal quotations omitted); *see also Richards v. Perttu*, 96 F.4th 911, 916 (6th Cir. 2024) (the PLRA "requires proper exhaustion, which means using all steps that the agency holds out.") (citation and internal quotations omitted). Plaintiff was not entitled to abandon the grievance process when he did not receive a timely response, *Hartsfield*, 199 F.3d at 309, and he cannot be said to have exhausted his administrative remedies when he failed to pursue his grievance to the full extent permitted by the grievance policy. *Mitchell*, *supra*.

Plaintiff's argument to the contrary is unpersuasive. Plaintiff argues that "the Honorable Judge Trauger has mentioned in her rulings" in two other cases brought in this Court, *Hall v. Trump, et al.*, Case No. 3:19-cv-00628, and *Hugueley v. Parker, et al.*, Case No. 3:19-cv-00598, that the TDOC grievance procedure "is basically non-existent. It does not work; it is ineffective and a waste of time." (Docket Entry No. 118 at 2.) However, Plaintiff does not identify the actual order or opinion issued in either of those cases in which the Court made these "mentions." Further, a review of the docket in the two noted cases does not show that any such categorical conclusion about the TDOC grievance systems was made by the Court in either case. The Court in *Hall v. Trump* did not address the issue of PLRA exhaustion. The Court in *Hugueley v. Parker* did address PLREA exhaustion, finding that the defendants in that case had not met their burden of showing that they were entitled to summary judgment based upon a PLRA exhaustion defense because genuine issues of material fact existed about whether administrative remedies were available to the plaintiff and about whether the plaintiff's affirmative efforts to exhaust were sufficient. *See* Memorandum entered August 17, 2020 in Case No. 3:19-cv-00598 (Docket Entry No. 75) at 9-16. However, the decision was based upon the particular facts of that case, which involved the plaintiff's challenge to his prolonged detention in solitary confinement on death row and his ability to grieve that matter. At no point in *Hugueley* did the Court make the type of categorical statements about the grievance system that Plaintiff asserts were made by the Court.

## C. Mattress Pad Removal Claim

Although the Court finds that Plaintiff's mattress pad removal claim has not been fully exhausted for the purposes of the PLRA, the Court nonetheless briefly addresses the merits of this claim.

16

Prison inmates are protected by the Eighth Amendment from being subjected to cruel and unusual punishment. Encompassed within this protection is the right for a prison inmate to receive a certain level of medical care such that the inmate's serious medical needs are not treated with deliberate indifference by prison officials. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). This exacting standard is not met by a showing of negligence or even medical malpractice, *Estelle*, 429 U.S. at 105; *Comstock*, 273 F.3d at 702, and it requires a showing of a significant level of both objective seriousness as far as the harm caused or the risk to the inmate and subjective culpability on the part of the defendant. *Wilson v. Seiter,* 501 U.S. 294 (1991); Whitley *v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety ... . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). With these legal principles in mind, the Court now turns to the evidence.

TDOC policy provides for inmates to receive medically approved devices or equipment. TDOC Policy #113.08, Prosthetic and Durable Medical Equipment, provides that:

> When deemed necessary by the attending health care provider, health care prosthetic devices and durable medical equipment shall be provided to inmates in order to correct, assist, or improve significant body impairment or debilitating condition.

(Docket Entry No. 107-4 at 3.) The undisputed evidence shows that Plaintiff had the eggshell mattress pad in his cell pursuant to an order from Dr. Siberry, dated May 25, 2021, for a medical accommodation due to back pain. (Docket Entry No. 107-2 at ¶¶ 23-24 and Docket Entry No. 116-1.) The Order, dated May 25, 2021, was valid for one year and expired on May 27, 2022. (Docket

17

Entry No. 107-2 at ¶ 25-26.)[7]  Although the eggshell mattress pad remained in Plaintiff's cell after May 27, 2022, this occurred in the absence of a new or updated medical order for Plaintiff to continue to have the eggshell mattress pad.

The undisputed evidence shows that, sometime around November 2022, eggshell mattress pads were uniformly removed from inmate cells at the RMSI because of a concern about fire risks associated with the pads. (Docket Entry No. 107-2 at ¶ 30; Docket Entry No. 107-4 at ¶¶ 5-7; Docket Entry No. 107-6 at ¶¶ 11-12.)  There is no evidence before the Court that Plaintiff was singled out for the removal of his eggshell mattress pad.

The undisputed evidence also shows that the inmates who had mattress pads removed were directed by prison staff to contact the medical staff about obtaining new orders for replacement pads. (Docket Entry No. 107-2 at ¶ 31; Docket Entry No. 107-4 at ¶ 8.)  Although Plaintiff submitted a sick call request regarding his lower back pain, he did not receive a medical order approving a new mattress.  (Docket Entry No. 107-8 at ¶¶ 9-10.)  The undisputed evidence shows that Plaintiff was examined by Dr. Madubueze Nwozo on several occasions during 2023 and 2024 and that Dr. Nwozo reviewed lumbar x-rays of Plaintiff from September 23, 2023.  (Docket Entry No. 107-2 at ¶¶ 27, 29, and 39; Docket Entry No. 107-3).  Dr. Nwozo determined that, although continued accommodations for Plaintiff in the form of the head protective helmet, a bottom bunk assignment, and a first-floor housing assignment were warranted, there was no medical indication of a need for a special mattress to be provided to Plaintiff.  (Docket Entry No. 107-3 at ¶¶ 11-12.)

Plaintiff clearly objects to the removal of the eggshell mattress pad and the absence of a replacement pad, contending that:  (1) he has not been "miraculously cured" of his medical

---

[7] The Court notes that there is no evidence in the record that Dr. Sidberry's May 2021 Order was a renewal of a longstanding order for Plaintiff to have an eggshell mattress pad or that any other

conditions; (2) Dr. Sidberry would have continued the medical order for the mattress pad had he not died; and, (3) Dr. Nwozo is a new doctor to Plaintiff who has "no knowledge of Plaintiff other than seeing him once or twice" and that his diagnosis that Plaintiff does not need a replacement mattress pad should be viewed with skepticism. (Docket Entry No. 115 at 2; Docket Entry No. 118 at 2-3.)

These contentions notwithstanding, in the end, there is insufficient evidence in the record from which a reasonable jury could conclude that Plaintiff's Eighth Amendment rights were violated by the removal of the eggshell mattress pad and the fact that it was not replaced by another type of mattress pad. There is no evidence that any Defendant removed Plaintiff's eggshell mattress pad in a random or arbitrary manner. To the contrary, Plaintiff's mattress pad was removed as part of a uniform security measure to remove mattress pads at the RMSI that posed a fire risk. Limiting fire risks inside a prison is certainly a legitimate and important penological purpose. Furthermore, at the time the mattress pads were removed, the medical order for Plaintiff to have the mattress pad had expired and there was no current order in place for him to have a mattress pad. Additionally, upon the removal of the mattress pads, inmates had the ability to contact the medical staff about the matter and to request new medical orders for replacement pads. There is simply no evidence that any Defendant subjectively acted in a deliberately indifferent manner with respect to the removal of Plaintiff's mattress pad.

Additionally, Plaintiff was undisputedly provided with overall general medical care and examinations by the prison medical staff at the RMSI regarding his medical issues during the relevant period and was able to bring any issues about his back pain and/or the need for a new mattress pad to the attention of the medical staff. In the absence of other evidence, Plaintiff's mere disagreement with the decision of the medical staff and of Dr. Nwozo to not renew Dr. Sidberry's

_____

orders for an eggshell mattress pad had been issued prior to May 2021.

19

order or to not issue a new order that Plaintiff be provided with some type of replacement mattress pad is not sufficient to support his constitutional claim. Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F.App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F.App'x 602, 605 (2014).

The excerpts from the deposition transcript of Dr. Sidberry that Plaintiff attaches to his response offer no support for Plaintiff's claim. First, the deposition took place as part of the discovery in the *Hugueley* case and does not directly address the issues in the instant case. Second, the fact that Dr. Sidberry wrote orders for inmates to have eggshell mattress pads based on his own medical judgment that such orders were warranted is undisputed. This does not mean however that subsequent prison physicians were required to continue the order from Dr. Sidberry. In the absence of other evidence, the fact that one treating physician differs in his opinion about the necessity of a certain type of treatment does not evidence deliberate indifference. *See e.g. Mann v. Cook*, No. 3:16-CV-537-HSM-CCS, 2017 WL 4052377, at *4 (E.D. Tenn. Sept. 13, 2017) (" … a difference of opinion between doctors … does not amount to deliberate indifference."); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *36 (E.D.Ky. June 9, 2006) ("… the fact that an inmate or even another physician would choose a different course of treatment will not support a claim for relief …")

## D. Supplemental Jurisdiction

Upon the dismissal of Plaintiff's federal claims, the only claims remaining in this case would be the state law claims. Because the dismissal of Plaintiff's federal claims extinguishes the basis for original federal jurisdiction in the case, the Court can decline to exercise supplemental jurisdiction

20

over the state law claims. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F.App'x 580, 584 (6th Cir. 2011) ("[T]his Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."); *Lyndon's LLC v. City of Detroit, Michigan*, No. 23-1895, 2024 WL 3427176, at *3 (6th Cir. 2024) ("Both federal statutory provisions and our precedent … permit [and] encourage district courts to decline to exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed.") (internal citations omitted).

## RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1) The motion for summary judgment (Docket Entry No. 107) filed by Defendants be **GRANTED** and summary judgment be entered in favor of Defendants as to Plaintiff's Section 1983, ADA, and Rehabilitation Act claim.

2) The Court decline to grant supplemental jurisdiction over Plaintiff's state claim claims.

3) This action be **DISMISSED** in its entirety.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947

21

(6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

22